EDWARD L. SCHEUFLER, Superintendent of the Insurance Department of the State of Missouri, C. E. MOTTAZ, I. C. SMITH, VIRGINIA BEHNKEN, WILLIAM H. MORGENS, CONTINENTAL COMPANY, a Corporation, and KANSAS CITY LIFE INSURANCE COMPANY, a Corporation, Respondents, v. CONTINENTAL LIFE INSURANCE COMPANY, Defendant, GUSTAVE J. CRECELIUS, ANNA M. CRECELIUS, and MYRTLE K. CRECELIUS, Appellants.—No. 38119.

EDWARD L. SCHEUFLER, Superintendent of the Insurance Department of the State of Missouri, GUSTAVE. J. CRECELIUS, ANNA M. CRECELIUS, and MYRTLE K. CRECELIUS, and KANSAS CITY LIFE INSURANCE COMPANY, a Corporation, Respondents, v. CONTINENTAL LIFE INSURANCE COMPANY, Defendant, C. E. MOTTAZ, I. C. SMITH, VIRGINIA BEHNKEN, WILLIAM H. MORGENS, and CONTINENTAL COMPANY, a Corporation, Appellants.—No. 38120.—175 S. W. (2d) 836.

Court en Banc, November 1, 1943.

Rehearing Denied, December 6, 1943.

*Wm. H. Biggs* and *Ralph B. Graham, Jr.,* for Gustave J. Crecelius et al., appellants.

*Sebree, Shook & Gisler* and *Harry H. Kay* for C. E. Mottaz et al., appellants.

1142

*Lawrence Presley* and *Preston Estep* for Edward L. Scheufler, State Superintendent of Insurance, respondent.

*Stanley Bassett* and *Jos. R. Stewart* for Kansas City Life Insurance Company, respondent.

1144

BOHLING, C.—This is a three-party contest over a balance of approximately $95,000 remaining in the hands of the Superintendent of the Insurance Department of the State of Missouri (hereinafter sometimes designated Superintendent) upon the winding up of the affairs of the Continental Life Insurance Company, a corporation (sometimes designated Continental), claims thereto being asserted on behalf of the stockholders (through C. E. Mottaz et al.) and on behalf of the policyholders (through Gustave J. Crecelius et al.) of the Continental Life Insurance Company, and on behalf of Kansas City Life Insurance Company, a corporation, (also designated Kansas City Life herein), the reinsurer of the risks of the Continental Life Insurance Company (Secs. 6064, 6065, R. S. 1939; Laws 1933-34, Ex. Sess., p. 70, Secs. 5953, 5954). Said balance was awarded to the Kansas City Life Insurance Company, and appeals have been perfected on behalf of the stockholders and on behalf of the policyholders. A number of issues are presented by the litigants. A discussion of all issues would unduly extend this opinion. We shall endeavor to dispose of the litigation within a reasonable space, expressly reserving our opinion as to all issues not explicitly ruled herein. For instance: The stockholders and the policyholders, complain of the action of the court in entertaining and sustaining the Kansas City Life's motion to distribute to it while denying their respective petitions to intervene, asserting they were entitled to be heard on the merits. Notwithstanding the orders of the court denied the stockholders' and the policyholders' petitions to intervene, the parties and the court proceeded as though the contest between the three claimants was pending on the merits. This was irregular; but in the circumstances, we think we too may consider the case on the merits without discussing all issues presented.

On May 25, 1934, in proceedings instituted under Art. 10, Ch. 37, R. S. 1939 (consult Secs. 6052-6070, R. S. 1939), by the Superintendent in the Circuit Court of St. Louis city a decree, which became final, adjudged the Continental Life Insurance Company insolvent, enjoined it permanently from further prosecuting its business, and vested title to all its assets in said Superintendent and his successors in office, et cetera. See Sec. 6056, R. S. 1939, Laws 1933-34, Ex. Sess., p. 67, Sec. 5945; Sec. 6058, R. S. 1939; O'Malley v. Continental Life Ins. Co., 343 Mo. 382, 405, 121 S. W. 2d 834, 847[12]. On May 31, 1934, upon application, the Superintendent was ordered to conduct the business and affairs of the Continental and to take all proper steps to rehabilitate said company. See Sec. 6061, R. S. 1939, Laws 1933-34, Ex. Sess., p. 69, Sec. 5950. Said order of rehabilitation was amended July 12, 1934, and said amended order was amended January 3, 1936. The annual statement for the year 1935 of the Continental, filed by the Superintendent, disclosed that its liabilities, exclusive of the liability for capital stock, exceeded its assets by $2,004,451, as of December 31, 1935; $225,000 cash being set aside therein for "cost of trial and rehabilitation." The Continental, on April 9, 1936, and Ed Mays, a Continental stockholder, on May 1, 1936, filed separate applications for an order terminating the rehabilitation proceedings and for authorizing the Continental to resume title and possession of its property and the conduct of its business. The Superintendent, proceeding under orders entered [838] January 20, and April 13, 1936, received eight bids and proposals for the reinsurance of the policies, obligations, and risks of the Continental and filed the same on April 27, 1936. On May 28, 1936, the Superintendent filed an application for an order terminating the order of rehabilitation and for an order to authorize said Superintendent to settle and wind up the affairs of the Continental and for a decree dissolving said Continental. The Continental filed a plea in opposition. The above proceedings resulted, on July 25, 1936, in the entry of decrees terminating rehabilitation; approving the contract of reinsurance with the Kansas City Life Insurance Company; and setting out the purpose for which the $225,000 set aside for "cost of trial and rehabilitation" was to be expended.

*Decree terminating Rehabilitation.* The court found, among other things, the issues against the Continental and Ed Mays, stockholder; that the Continental had continued insolvent since May 25, 1934; that further efforts at rehabilitation would be futile and hazardous to creditors and policyholders of the Continental. The court decreed that the Continental was insolvent; that the order of rehabilitation be terminated; that the Superintendent settle and wind up the affairs of the Continental; that the Continental stand dissolved and its corporate charter annulled; and that the $225,000 be set aside and held by the Superintendent "subject to further orders of this court,"

for the necessary and proper legal and other expenses chargeable against said fund. The court also reserved, in rather general terms, jurisdiction of the cause to dispose of the business and assets of the Continental and for effectuating the provisions of the decree entered.

*Decree approving the Contract of Reinsurance.* This decree, among other things, found that the Kansas City Life Insurance Company's proposal and contract was fair, equitable and the best submitted for the reinsurance of the outstanding policy obligations and risks of the Continental Life Insurance Company and authorized the immediate execution and delivery of said contract, the court approving and confirming said contract. The contract, executed by the Superintendent as Party of the First Part and by the Kansas City Life as Party of the Second Part, by its President and Secretary, provided, insofar as deemed material, as follows:

Under Article I the "First Party . . . has and hereby does grant, bargain and sell, convey and confirm, assign, transfer and set over to Second Party all of the property; assets and rights of the above named Continental Life Insurance Company, real, personal and mixed, tangible and intangible, and including, without in any manner limiting the foregoing by specific mention of the following, all real estate, mortgages, notes, bonds, obligations and debts, and all reserve, contingent and special funds, and rights of action and defense of every kind and character, wherever located and by whomsoever held in possession, cash on hand and in bank or banks, and in the hands of and held by any officer, receiver, ancillary receiver or other person or persons, except the sum of $225,000 in cash withheld by First Party for cost of trial in the aforesaid suit and rehabilitation of said Continental Life Insurance Company . . . "

We need not detail the covenants of the Kansas City Life. The litigants, so far as we find of record, apparently treated said Second Party for the purposes here as undertaking to discharge Continental's obligations, especially of an insurance nature and subject to the lien mentioned hereinafter, not payable out of said $225,000.

Article VIII of the contract recited that a deficiency of approximately $2,000,000 existed in the required legal reserve on nonregistered policies and contracts of insurance issued, reinsured or assumed by Continental and provided that "a non-interest bearing lien, without carrying charge of any kind, equal to fifty per centum of the mid-policy year reserve for the current policy year on the 31st day of December, 1933 (adjusted to the nearest dollar), is hereby set up and imposed on each of said policies of life insurance . . . ," and authorized the deduction of the lien from the respective policies et cetera. "Any policyholder may at any time discharge the lien by the payment of the amount thereof, and may reduce the same from time to time by partial payments."

Article IX of the contract, in part, read: "Whenever the entire net earnings held by Second Party from the business and assets acquired hereunder, as hereafter defined in this paragraph, equals the amount of all **[839]** then existing liens set up and imposed under paragraph VIII hereof, all said liens shall immediately and automatically terminate and stand discharged, but if all said liens are not automatically terminated as above provided prior to the 31st day of December, 1946, Second Party will waive, fully discharge and terminate on that date all then existing liens."

Article XIX of the contract is entitled "Claims Not Transferred," and expressly stated that the Kansas City Life did not acquire title to the charter, stock and other records of the Continental, nor any claims the Superintendent might have or might have succeeded to against the Continental or certain enumerated parties.

The judgment approving said contract decreed in substantially the same language found in Article I of the contract, quoted in material parts supra, title and right of immediate possession in the Kansas City Life to all the assets and property of Continental, likewise providing: "excepting the sum of $225,000 in cash withheld by plaintiff for cost of trial and rehabilitation of defendant in this cause . . .."

The court also found that the assets transferred to the Kansas City Life were more than $2,000,000 less than the legal reserve required by law on the policies of life insurance and annuity contracts assumed and reinsured by said Kansas City Life; that said deficiency existed with respect to policies and contracts "not registered by the Superintendent of the Insurance Department of the State of Missouri and other states"; that "a lien upon and against the reserve value of said non-registered policies and contracts" was necessary to meet said deficiency; and accordingly set up, imposed and decreed a lien in favor of the Kansas City Life as mentioned in Article VIII, supra, of the contract.

*Decree with respect to the $225,000.* This decree, after referring to mention of the $225,000 in the decree terminating rehabilitation and the decree approving the contract of reinsurance, adjudged and decreed "that said sum of $225,000.00 in cash shall be held by the plaintiff, subject to further orders of this court, for the purpose of paying" necessary legal and other enumerated expenses, including items taxable as costs under Sec. 6065, R. S. 1939; and continued: "Such sums shall be disbursed by plaintiff on orders of this court . . . fixing the amount of compensation . . . and the amount of all necessary expenses . . . and any sum remaining after the payment of all such compensation and expenses shall, on order of this Court, be paid over by plaintiff to Kansas City Life Insurance Company." This decree also reserved jurisdiction over the cause in rather general terms.

Appeals taken from the orders aforesaid on behalf of the Continental and on behalf of Ed Mays were dismissed.

On September 13, 1940, the Superintendent filed his final report covering his administration of said $225,000. Hearing on its approval was set for October 18, 1940, and notice thereof given by publication. On said October 18, 1940, the stockholders and the policyholders filed their respective petitions to intervene, and the Kansas City Life filed its motion to distribute.

For many years prior to the change effected by the repeal and reenactment of Sec. 5953, R. S. 1929, in 1934 (Laws 1934, p. 70), said section dealing with reinsurance, provided: ''A decree approving said contract [of reinsurance] as executed shall be entered up, setting out said contract in full, and authorizing the superintendent to transfer and assign to said company *all* the assets and property of the dissolved company. The superintendent shall thereupon execute a general assignment of *all* the property and effects of the dissolved company to the reinsuring company, and thereupon the said reinsuring company shall be vested with *all* said assets in fee and absolutely . . . '' (Italics ours.) Sec. 6049, R. S. 1879. Subsequent to the change of 1934 said section provided: ''. . . said superintendent shall proceed to reinsure such risks on the best terms obtainable for all persons interested.'' Sec. 6064, R. S. 1939. The provision in the next section requiring a reinsuring company to pay the costs was not changed in the repeal and re-enactment of said section in 1934. R. S. 1929, Sec. 5954; Laws 1933-34, Ex. Sess., p. 70, R. S. 1939, Sec. 6065. Among the positions taken by the stockholders and policyholders and, incidentally, material to a recovery by either is the contention that the legislative intent manifested by the changes in the Insurance code was to authorize a contract of reinsurance without necessarily transferring [840] and assigning and vesting *all* of the assets and property of the dissolved company in the reinsuring company; i. e., reinsurance now may be lawfully effected in exchange for less than *all* the assets and property of the dissolved company. They contend on the merits that the instant contract of reinsurance did not transfer and assign the $225,000, or any part thereof, to the Kansas City Life; that the Kansas City Life did not purchase nor acquire said asset of Continental; and that the award of the fund in controversy to the Kansas City Life finds no consideration to support it, is a ''windfall'' to the Kansas City Life, is inequitable and should be reversed.

 From Sec. 6062, R. S. 1939 (formerly Sec. 5951, R. S. 1929, so far as material here), it appears to be the policy of this State that sums realized from the assets of dissolved insurance companies be applied, 1st, to expenses incurred in winding up its affairs; 2d, to taxes and debts due the United States, the State, and counties and municipalities of this State; 3rd, to death losses and matured policy claims; 4th, to debts and claims allowed against such company, and the unearned premiums and the surrender value

of its policies; and, lastly, after the payment of the foregoing in full, any balance shall be disposed of as the court may direct. The finding nisi that a deficiency exceeding $2,000,000 existed with respect to nonregistered policies and contracts occasioned the lien against the reserve value of such non-registered policies and contracts. The record established that these liens (standing as of December 31, 1939, well in excess of $1,500,000) are without hope of extinguishment prior to December 31, 1946, when the agreement of the Kansas City Life to waive and terminate said liens becomes effective. (Reinsurance Contract, Article IX.) With such liens outstanding against the reserve value of the non-registered policies and contracts, an award of this fund of approximately $95,000 to the stockholders of the insolvent and dissolved Continental Life Insurance Company would be inequitable and would do violence to the intent and spirit of the Insurance code and the intent and spirit of the judgments and decrees of July 25, 1936, terminating rehabilitation and approving the contract of reinsurance.

As between the Continental's policyholders and the Kansas City Life, we think the decree awarding the fund to the latter was for the right party, but possibly should be modified. The policyholders asked, nisi and here, that the fund be paid over to the Kansas City Life and credited on future premium payments. This position results from the difficulty of distributing the fund to the interested policyholders and the apparent practical result that there is no hope of discharging the liens against the reserve value of the non-registered policies and contracts of Continental prior to the Kansas City Life's agreed waiver and termination of said liens on December 31, 1946. The Kansas City Life's motion to distribute stated that under the contract of reinsurance and the decree approving the same a lien of fifty per centum had been imposed against the non-registered contracts of Continental and prayed that the fund be awarded to it "to be applied by petitioner, Kansas City Life Insurance Company, for the benefit of said policyholders as provided in said contract." The contract of reinsurance, drafted by the Kansas City Life, authorized any policyholder to discharge the lien against his policy in whole or part at any time. The position of the Superintendent was that the "fund should be paid to the Kansas City Life, because it would tend to reduce the liens on the policies."

Mr. Budinger, Vice-president and Actuary of the Kansas City Life, testified: "We set aside this $225,000 in making our bid, and looking at it, looked at it just as any other liability." The annual statements submitted by the Kansas City Life reflecting business transactions arising out of the Continental's business did not set up said fund or any part of it as an asset. He testified there was no expectation of the liens being discharged prior to the Kansas City Life's waiver and termination of said liens under the reinsurance contract; and

that an award of the fund to the Kansas City Life would merely add to the solvency of said company.

We set out material excerpts from letters of the Chief Counsel of the Kansas City Life to the Chief Counsel for the Superintendent. One dated June 21, 1938, in response to an inquiry concerning certain attorneys' fees read:

"This company has no objection whatever to the payment of the fees. Under our contract of reinsurance, the sum of $225,000.00 was excluded from the contract and left with the Superintendent [841] for the purpose of paying the unpaid expenses of the receivership and attempted rehabilitation proceedings. We have no interest in this fund, at least, until the rehabilitation and liquidation expenses are fully paid."

Another, dated October 5, 1938, concerning a claim payable out of said fund, referred to the $225,000 as "the fund retained by the Superintendent when this company took over the business and assets of the Continental;" and continued:

"We have taken the position all along that we were not a party to the disposition of the fund, but in the payment of claims and other disbursements from the fund we were entirely willing to abide by the judgment of the Superintendent."

On January 31, 1939, said General Counsel, answering an inquiry of Ed Mays, wrote: "The original amount, $225,000.00, was set up in the annual statement of the Superintendent of Insurance in charge of the Continental Life for costs of trial and rehabilitation, and was excluded in our contract assuming the business of the Continental and left with the Superintendent of Insurance."

Much is said in the Kansas City Life's brief to sustain the outright award to it. It states, among other things, that it, as the reinsuring company, was obligated by statute to pay the expenses which the fund was withheld to pay. Sec. 6065, R. S. 1939; Laws 1933-34, Ex. Sess., p. 70, Sec. 5954. The contract and the decrees of July 25th, 1935, mention the fund as being "withheld," which term is defined in Webster's International Dictionary, 2d Ed., as follows: "2. Held back unbestowed or undelivered." Cases are cited wherein the word was considered used in the sense of "undelivered." United States v. Dumas, 149 U. S. 278, 284, 37 L. Ed. 734, 13 S. Ct. 872, 873; Ballew v. United States, 160 U. S. 187, 194, 40 L. Ed. 388, 16 S. Ct. 263. The fund is no part of the "net earnings" from the business and assets acquired by the Kansas City Life and mentioned in Article IX of the reinsurance contract. It was and is an asset of the Continental either conveyed or not conveyed to the reinsuring company. It represents, in part at least, payments received by Continental from non-registered policyholders. The parties to the contract of reinsurance, particularly the Kansas City Life, treated it as an "unbestowed" asset. The decree of July 25, 1936, with respect to the

$225,000 evidenced the Court's then intent to pay over any balance, ''on order of this Court,'' to the Kansas City Life. The policyholders accepting reinsurance acted upon the strength of the reinsurance contract and must have considered the decrees of the court presumptively proper, including the decree directing any balance of the fund, ''on order of this Court,'' to be paid to the Kansas City Life. If the fund be applied to the discharge of the liens as if paid by individual policyholders under the reinsurance contract, the policyholders will not be deprived of all benefits and will receive that consideration they might have hopefully anticipated at the time the reinsurance contract was agreed upon if the future events had been foreseen, as it is unlikely that a reinsurer would assume obligations in excess of assets on hand and available to discharge said obligations. We think this is the most equitable disposition of the fund to be made under the instant record and within the scope of the record.

The decree of the court nisi merely directed payment to the Kansas City Life Insurance Company. It is, therefore, reversed, with directions to modify the same so as to require the application of the available balance to the discharge of the individual liens created under Article VIII of the contract of reinsurance and the decree approving the same.

PER CURIAM:—The foregoing opinion by BOHLING, C., in Division Two, is adopted as the opinion of the Court en Banc. All concur except *Gantt, J.*, absent.