STATE of Missouri, ex rel. ISC FINAN-CIAL CORPORATION, Relator,

v.

The Honorable Byron L. KINDER, Judge of the Circuit Court of Cole County, Missouri, Division No. II, Respondent.

No. WD 35920.

Missouri Court of Appeals,
Western District.

Jan. 15, 1985.

Solbert M. Wasserstrom, Gene A. De-
Leve and Jerald S. Enslein, Kansas City,
for relator.

Jim Tom Reid, Kansas City, for respon-
dent.

Before MANFORD, P.J., and KENNE-
DY and NUGENT, JJ.

KENNEDY, Judge.

Upon application of ISC Financial Corpo-
ration, sole stockholder of Old Security
Life Insurance Company, we issued our
preliminary writ of prohibition, prohibiting
respondent judge from closing the receiver-
ship of Old Security Life Insurance Compa-
ny, of which the Missouri Director of Insur-
ance, C. Donald Ainsworth, was receiver.

We now modify our preliminary writ and
as modified make the same absolute.

The background facts are as follows:

Old Security Life Insurance Company
was placed in receivership by order of the
Circuit Court of Cole County dated October
20, 1977, in accordance with the procedure
of § 375.560 et seq., RSMo 1969. The stat-
ed purpose of the receivership was the
rehabilitation of the company, see § 375.-
680, RSMo 1969, but on May 15, 1979, the
court ordered the proceeding converted to
one looking toward the liquidation of the
company, § 375.690, RSMo 1969.

The receivership has been notably and
unexpectedly successful and in early 1984,
there was on hand something in excess of
$17,000,000 above estimated obligations
and expenses of the receivership.

The events which precipitated the
present litigation began with the entry by
respondent judge of an order on February
16, 1984. That order directed the receiver
to file his final settlement by May 15, 1984,

"a date five years from the date of the order of this court dissolving said company", first giving statutory notice of his intention to do so. See § 375.760.3, RSMo 1969.[1] This order was followed on March 26 by an order appointing a trustee to receive distribution of the receivership estate and to complete the administration thereof. Then (presumably on May 15), in declared pursuance of the February 16 order, a proposed final settlement and proposed order of discharge of the receiver were filed by the receiver. Our stop order and subsequent preliminary writ of prohibition prohibited the closing of the receivership estate.

It is clear from the language of the February 16 order that the respondent judge considered section 375.760.1 to be mandatory and that the receivership was thereby required to be terminated within a five-year period.

There remained pending in the receivership at that time a great many contingencies and uncompleted matters, both on the asset side and on the liability side, several of them involving substantial sums of money. We shall describe these matters later in the opinion. The trial court, in order to provide for their completion, on March 26, 1984, entered the order earlier referred to, appointing one Elaine S. Healey as trustee to receive the moneys from the receiver. The lengthy order gave somewhat specific directions for the trustee's management of the receivership funds. She was to administer the fund, keep the same invested, and receive claims against the same and submit them to the court. Investments were to be made "in the name of the court", but inter-

est received therefrom should be "paid over direct to the trustee who shall keep a record with respect thereto". She was to enter into a bond of $10,000. In broad terms, it may be said that the order purported to substitute the trustee as receiver in the stead of the director of insurance (who would be relieved of his duties after filing his final settlement and making distribution of the assets in his hands). The duties imposed upon the trustee by the March 26 order were roughly the same duties that the director of insurance would perform if he continued as receiver.

The receiver in pursuance of the court's order of February 16, 1984, published his notice of final settlement in accordance with section 375.760.3. The notice set May 15, 1984, as the date upon which the final settlement would be filed.

On May 14, relator ISC Financial Corporation filed its application for writ of prohibition as noted in the first paragraph of the opinion. We issued our stop order on that date, and on May 31, 1984, issued our preliminary writ.

1. *The February 16, 1984, order requiring final settlement and distribution.*

■ The order of February 16, 1984, requiring the filing by the receiver of a final settlement preliminary to distribution of the assets and discharge of the receiver was premature. The pendency of the number of unresolved matters, and the size and complexity thereof, made it so.

The matters remaining unresolved at the time of the court's February 16 and March 26 orders, and of the application for writ of

---

1. Section 375.760 reads as follows:
 1. The director shall make final distribution of the assets and final settlement of the affairs of each insolvent company, now or hereafter in his charge, and settlement of his accounts within the shortest time practicable, in no case to exceed three years from the date at which the company has been or shall be dissolved. The court may, for good cause, extend the time for such final settlement, not more than two years.
 2. For the purpose of making final settlement the superintendent shall, at least three months before making the same, convert into money all assets remaining undisposed of, and

distribute the same among those entitled thereto, under the order of the court.
 3. Notice of such final settlement shall be given by publication in some newspaper published in the city or county in which such proceedings are pending, for at least four weeks prior thereto.
 4. The director shall hold any moneys which are unpaid or unclaimed by the persons entitled thereto for one year after final settlement, and at the expiration of such year, he shall pay all unclaimed sums into the state treasury to be held and disposed of as provided by laws for escheats.

prohibition on May 14, 1984, need not be described in detail, but the following will indicate something of their number, size and complexity:

A claim by R.A. Sniezek, formerly special counsel for the receiver, for $926,-782.63 additional fees for services rendered; litigation among receiver, Continental Bank of Illinois, and trustees of Central States, Southeast and Southwest Areas Health and Welfare Fund, in which receiver claimed upwards of $2,000,000 against bank, and in which Fund claimed $4,250,000 against receiver (This litigation had been settled by time of oral argument on November 7, resulting in augmentation of receivership estate by 2.6 million dollars); a contested claim by State of Missouri for $800,000 state income taxes; a dispute over a $630,000 trust fund in hands of receiver which was claimed by relator and against receiver's resistance; claims of numerous claimants for unpaid interest on claims allowed against the receiver and paid, the allowance of which interest was resisted by relator; a dispute over the disposition of checks issued to various claimants and not cashed (totalling $138,-865.17, according to proposed "final settlement), claimed by the receiver to escheat to the state, a position opposed by relator.

In addition to the foregoing, the proposed final settlement of the receiver lists several unresolved claims with the notation that the amounts were "undeterminable at this time". Also on May 15 the commissioners of claims filed an application for additional compensation at double the $50 hourly rate at which they had been paid. We gather from the oral argument that the amount thus claimed totals $550,000. This claim had by that time been allowed by respondent judge, and was on appeal. We are advised also in oral argument that relator intends to challenge the proposed final settlement based upon the alleged failure to the receiver to prosecute "a particular claim"—not further described—in the amount of $8,000,000.

The foregoing listing is not exhaustive, but it indicates the size and complexity of the matters remaining to be resolved. They could not be characterized as "loose ends". They constitute substantial and active affairs which will call for a great deal of time, attention and expense on an ongoing basis. They will require active and expert management.

The February 16 order ought not to be implemented and enforced, but should be set aside.

2. *The order of March 26 appointing trustee to administer estate.*

 The statutory scheme for the receivership in liquidation of an insurance company, section 375.560, et seq., sets up a self-contained and exclusive statutory scheme. *O'Malley v. Prudential Casualty & Surety Co.,* 230 Mo.App. 935, 80 S.W.2d 896, 897 (1935). It makes no provision for the appointment of a trustee to take over the duties of the director of insurance acting as receiver. In appointing Ms. Healey as trustee, as the court did in its March 26 order, and in providing in such order for a system of continuing the affairs of the receivership the court exceeded its jurisdiction. The director of insurance is to be the receiver and he is to conduct the affairs of the receivership under the supervision of the court, in accordance with the statutory system.

For the above reasons, the order of March 26 should be vacated.

3. *The effect of section 375.760.1.*

 As noted before, the respondent judge, it is clear from his February 16 order, considered the time limitation of section 375.760.1 to be applicable, and to require the completion of the receivership on or before May 15, 1984. The statute is not applicable and does not make that requirement. The statutory time period had never commenced to run. The date which starts the period running is "the date at which the company has been or shall be *dissolved*" (emphasis ours). There had never been such a dissolution, so far as the record shows. The May 15, 1979, order, which was treated by the court as trigger-

ing the limitation period, did not purport to dissolve Old Security Life Insurance Company.

 But, more basically, the statute with respect to the time limitation is not mandatory; it is directory only. It prescribes no consequences of the failure to complete the receivership within five years. It does not say what is to happen to the assets of the estate, or to the claims or the controversies, if the time limitation passes and the receivership has not been closed. It is a sound principle of statutory construction that a statute is not to be interpreted to produce an absurd result. *State ex rel. Stern Bros. & Co. v. Stilley,* 337 S.W.2d 934 (Mo.1960); Sutherland Stat. Const. § 45.12 (4th Ed). It would be wholly impractical to treat this statutory time period as having any but directory force. *Hedges v. Department of Social Services of Missouri,* 585 S.W.2d 170, 172 (Mo.App. 1979); *see generally* Sutherland Stat. Const. § 50.01 et seq. (4th Ed.). The receivership assets and liabilities could not be cast into limbo. As a matter of fact, the director, Mr. Ainsworth, "in his separate capacity as the Director of the Missouri Division of Insurance and domiciliary and ancillary receiver of other insolvent insurance corporations in the State of Missouri," has filed in this proceeding an amicus curiae brief resisting a judicial interpretation of the statutory time limit as mandatory, and suggesting the confusion which would follow such a construction. It points out that in many if not most of these insurance company receivership proceedings it is not possible to bring them to a conclusion within the five-year period. See e.g. *Scheufler v. Continental Life Insurance Company,* 351 Mo. 1139, 175 S.W.2d 836 (1943), and *Leggett v. Missouri State Life Insurance Company,* 342 S.W.2d 833 (Mo. banc 1961).

Respondent's counsel in oral argument concedes that the trial court order requiring final settlement and distribution of the receivership estate is one which cannot be implemented in the present condition of affairs, and tells us in oral argument that the receivership will proceed regardless

whether our writ of prohibition is made absolute.

4. *Appropriateness of writ of prohibition.*

 The orders of February 16 and of March 26 were in excess of the trial court's jurisdiction. There is available to relator no remedy by appeal, and the case is a proper one for the writ of prohibition. *Jones v. Corcoran,* 625 S.W.2d 173, 174 (Mo.App.1981).

 The respondent challenges the appropriateness of the prohibition remedy on one ground only. He argues that relator ISC Financial Corporation resists the closing of the receivership estate in order not to receive the funds to be distributed therefrom. It resists receiving the funds, says respondent, because it would be required, under an order of the bankruptcy court—relator is in Chapter 11 proceedings—to pay out the same upon the principal of obligations which bear a low rate of interest. This court, says respondent, should not use the writ of prohibition to aid such a dubious scheme, citing *State ex rel. Helm v. Duncan,* 225 Mo.App. 393, 36 S.W.2d 679 (1931), and *In Re State of Missouri,* 664 F.2d 178 (8th Cir.1981).

There is nothing in the record before us, though, which bears out respondent's assumption that the funds would be paid to relator if the receivership were closed. The plan which is in place calls for the distribution of the funds, not to relator, but to a court-appointed trustee. Relator therefore gains no unconscionable advantage over the holders of the obligations mentioned above by the issuance of our writ.

*Conclusion.*

We hereby direct that the February 16, 1984 order and the March 26, 1984 order described earlier in the opinion be vacated and set aside and direct that the same not be enforced or implemented in any way. The receivership may then proceed and the various claims and other unresolved disputes may be disposed of in an orderly

fashion. Our preliminary writ, as so modified, is hereby made absolute.

All concur.