In re TRANSIT CASUALTY COMPANY
in Receivership.

WILLIAM BLAIR REALTY PARTNERS,
III, Appellant,

v.

TRANSIT CASUALTY COMPANY
in Receivership, Respondent.

No. WD 50118.

Missouri Court of Appeals,
Western District.

June 27, 1995.

Ronald Medin, Jefferson City, for appellant.

Todd Massa, Katherine Walsh, Chesterfield, for respondent.

Before HANNA, P.J., and BERREY and SPINDEN, JJ.

HANNA, Presiding Judge.

In 1983, Transit Casualty Company entered into a lease agreement with Foster Plaza, a joint venture, for 14,348 square feet of office space located in Norcross, Georgia. K & E Joint Venture was a successor in

interest to the property, and it extended the property leased to Transit Casualty another 1,678 square feet with a corresponding increase in rent to $15,479.06 per month. The appellant acquired its interest in the property (and, therefore, in the lease) by warranty deed in September 1985. The lease was to expire on January 31, 1989.

On November 26, 1985, the Cole County Circuit Court entered an order placing the assets of Transit Casualty under conservatorship with the director of Missouri Division of Insurance acting as the conservator. The acting director advised the appellant that "[u]ntil further notice, Transit's lease with you will remain in effect." A week later, on December 3, 1985, the plaintiff was informed that the insurance company had been placed in receivership. Informal discussions continued between the parties until April 16, 1986, at which time the Receivership gave written notice that it intended to vacate the premises on May 31, 1986. The May rent in the amount of $16,440.42 was paid. The Receivership continued to occupy the premises during June 1986. The rental payments were made in full through the date that Transit Casualty physically vacated the premises. The appellant took steps to locate a replacement tenant. A portion of the premises was rented after Transit Casualty left, thereby mitigating the loss claimed by the amount of $104,144. The appellant's claim is for unpaid rent in the amount of $588,749.84 from the time that Transit Casualty physically vacated the premises in July 1986, through the end of the lease, January 31, 1989.

Judge Byron L. Kinder has supervised the activities of the Receivership since its inception close to ten years ago. In that capacity, he enacted a set of local rules in order to facilitate the efficient administration of the liquidation of Transit Casualty. The court's ruling that is challenged in this proceeding is the demotion of appellant's claim from Class I to Class IV.[1]

In May 1987, plaintiff filed its claim again the Receivership in the amount of $588,-

749.84 for unpaid rent accruing after Transit Casualty vacated the premises. The court appointed Mr. Riley, a local attorney, as one of several "Commissioners of Claims" to take evidence and submit findings and conclusions to the court pursuant to Amended Rule 75. Mr. Riley held a hearing and determined that the appellant was a Class IV general creditor and was owed $476,772.18. Both parties appealed the decision. The court remanded the claim to Commissioner Riley to consider whether the appellant had mitigated its damages. The Commissioner determined that appellant had mitigated its damages and reduced the claim to $405,509.02. Further, Mr. Riley reversed his initial decision and concluded that the claim should be classified as a Class I expense of administration of the Receivership. An appeal was taken and the trial court reinstated the Commissioner's original conclusion that the claim was a Class IV claim and adopted the revised damage award of $405,509.02.

When the Receivership filed its appeal, it did so by filing a "Petition for Review," which the appellant claims was outdated and, instead, should have been filed as a Motion for Reconsideration. Appellant argues that because a Motion for Reconsideration was not filed within fifteen days as the rule requires, the Receivership's appeal was jurisdictionally defective. Additionally, the appellant states that, assuming the Receivership's pleading is considered a Motion for Reconsideration, Second Amended Rule 75 dictates that the trial court decide the appeal within ninety days following the filing date, which the court did not accomplish. For these two reasons, the appellant maintains that the trial court was without jurisdiction to rule and the Commissioner's award is final. Simply stated, the appellant's position is that the Receivership sought review under an appeals process that had been superseded by a subsequent rule.

Second Amended Rule 75 was retroactive to December 3, 1985, except for those claims already assigned to the Commissioner of

---

1. Pursuant to § 375.700, RSMo Supp.1993, a Class I claim is the highest priority claim and includes the expenses of closing the business and disposing of the assets of the insolvent insurer.

A Class IV claim is relegated to the lowest priority and follows taxes and debts due the state, the United States, counties and municipalities and the payment of policy claims.

Claims. The cover page of the rule directs: "Amended Rule 75 (Revised 1990), shall still apply to all claims which were already assigned to the Commissioner of Claims as of 8/28/92."

The circuit court instituted the rule and a series of other rules regarding the processing of claims. Those relevant to this inquiry are Administrative Order No. 36, which replaced "Exceptions" with "Petition for Review" as the pleading to be used in the appeal process, and Administrative Order No. 38, which instituted a new disputed claims procedure and adopted Second Amended Rule 75. Specifically, appellant states that Second Amended Rule 75 directs that an appeal be initiated by filing a Motion for Reconsideration and that the motion be acted on by the trial court within ninety days of its filing or the motion would be considered denied for all purposes. The appellant maintains that Second Amended Rule 75 was in effect when the Commissioner's decision was issued on September 8, 1993. Since the trial court's ruling was made more than ninety days after the filing of the appeal, it would be void, leaving the Commissioner's decision as final.

■ Fundamental fairness and due process require that a trial court is not allowed to dispense with a procedural rule of its own making. *Henningsen v. Independent Petrochem. Corp.*, 875 S.W.2d 117, 120 (Mo.App. 1994). Second Amended Rule 75 defines a procedure for the court's exercise of its inherent power, and if the rule was applicable, it was required to be followed. *Id.*

Because the title of the pleading is of no particular consequence, we understand appellant's real objection to be that the trial court did not act within ninety days of the filing of the appeal.[2] Appellant argues that the date of the remand order, December 3, 1992, was the date of the assignment and, therefore, determines whether Second Amended Rule 75 is applicable to this case. The appellant considers the trial court's re-

mand to the Commissioner as constituting a new assignment, separate and distinct from the first one. On the other hand, if the original date is considered as the assignment date, the previous rule controls, which placed no restriction on the time in which the trial court had to decide. We hold that the claim was assigned before August 28, 1992, the date when the Second Amended Rule 75 took effect. In so holding, we give due deference to the court that enacted and interpreted the local court rule.

Appellant's claim was presented to the Receivership on May 7, 1987. The claim was assigned to the Commissioner on a date not readily apparent from the briefs or the record before us. Clearly, the assignment preceded the hearing date of November 6, 1991, and the Commissioner's order of December 4, 1991.

■ These local rules were enacted by the circuit court as a necessary adjunct to the efficient operation of the liquidation proceeding. The construction of the rule is for the court which enunciated it, *State ex rel. Logan v. Ellison*, 267 Mo. 321, 184 S.W. 963, 964 (Banc 1916), since it is the best judge of its own rules. *State ex rel. Missouri Highway & Transp. Comm'n v. McCann*, 685 S.W.2d 880, 884 (Mo.App.1984); 21 C.J.S. *Courts* § 131(a) (1990). Thus, a higher court is reluctant to interfere with a court's construction of its own rule. *Ellison*, 184 S.W. at 964.

■ The rules provide that in the event an appeal is taken to the circuit court, the circuit court may either affirm the decision, modify it, enter a new determination or remand the cause to the same Commissioner for further proceedings as directed by the circuit court as the interests of justice may require. A remand to the Commissioner is specifically provided for. The rules do not suggest that the remand is a separate and new assignment of the claim. We believe that the two proceedings before the Commissioner were part of one continuous litigation

---

**2.** We discern from the brief, concerning the "Exceptions" or "Petition for Review" controversy, that the rule did little more than change the title of the pleading. We are not apprised of a substantive change in the rule that worked to the

appellant's prejudice simply because of the change in title. Our review of Administrative Order No. 36 confirms the appellant's failure to identify a substantial change on any matter at issue.

process. There was one claim and it was "assigned" to the Commissioner only once as that term is used in the rule. We believe that this interpretation is in accordance with the procedures in effect at the time of the assignment and is a reasonable one. It is apparent that the court interpreted the remand in this manner. The court's interpretation did not violate the plain terms of the rule or of any statutory law. Under the local court rule in effect on August 28, 1992, the trial court did not have a ninety-day restriction in which to review the Commission's decision and render its decision. Point denied.

Next, the appellant claims that the Receivership became the lessee under the lease because a novation of the lease took place between the appellant and the Receivership. It argues that the trial court erred in reversing the Commissioner's decision because there was substantial evidence presented to support the Commissioner's determination of a novation resulting in a Class I claim. The parties agree that the standard the trial court was required to use in reviewing this case is that the appeal of the decision of the claims commissioner "shall be determined by the [trial court] upon the record made before the Commissioner. . . ." The trial court is to give due regard to the opportunity of the Commissioner to judge the credibility of the witnesses.

The Commissioner found that a novation of the lease agreement occurred between the parties when the Receivership stepped into the place of Transit Casualty. The novation, per the Commissioner's decision, gave the claim Class I standing. The novation argument contemplates that the Receivership, through its employees, created a new lease agreement. We do not reach the merits as to whether a novation was created because the insurance insolvency statutes prevail over the common law novation of the lease agreement.

■ "The statutory scheme for the receivership in liquidation of an insurance company, section 375.560, et seq., sets up a self-contained and exclusive statutory scheme." *State ex rel. ISC Fin. Corp. v. Kinder,* 684 S.W.2d 910, 913 (Mo.App.1985). The statutory provisions of the Missouri insolvency law govern the administration of the assets of an insolvent insurer, and the trial court must administer the insolvent estate in accordance with these statutory provisions.

■ The insurance insolvency statutes bind the trial court, the Special Deputy Receiver and other employees of the Receivership with regard to the expenses of administration, such as leases and employment contracts. Section 375.650.2, RSMo Supp.1993, provides that, upon entry of the liquidation order, the Director of Insurance may appoint a Special Deputy Receiver to manage the Receivership, and states that the Director, the Special Deputy and their employees and agents "shall be subject to the orders and directions of the court with respect to their actions or omissions in connection with the receivership." Section 375.740.2, RSMo Supp.1993, directs that "all expenses of taking possession of the property of the insurer and the administration thereof shall be approved by the director, all subject to the approval of the court, and shall be paid out of the funds or assets of the insurer. . . ." Section 375.954.1, RSMo 1986, requires that the Receivership take the assets of the insurer and "administer the same under the orders of the court." Finally, § 375.1176.2, RSMo Supp.1993, provides that the Special Deputy Receiver shall administer and liquidate the assets of the insolvent insurer under the general supervision of the Director of Insurance and the specific supervision of the court.

It is clear from a cursory reading of the Missouri insolvency statutes that the Director or Special Deputy Receiver may only extend the insurer's assets, i.e., a long term lease, subject to the court's approval. If the Special Deputy Receiver in fact entered into a novation and committed the Receivership to continuation of a four year lease, his actions could only be "subject to the orders and directions of the court." The trial court must administer the liquidation proceeding strictly in accordance with the Missouri insolvency statutes, and a common law novation of the lease agreement will occur only with the court's approval.

The provisions of the insolvency statutes prevail over any general statutes or common law because the legislature has set forth the substantive law and the procedures to be followed. *State ex rel. Melahn v. Romines,* 815 S.W.2d 92, 94 (Mo.App.1991). An example of the Missouri insolvency statutes prevailing over Missouri Supreme Court Rules of Civil Procedure and Missouri statutes is found in *Melahn v. Continental Sec. Life Ins. Co.,* 793 S.W.2d 425, 429–30 (Mo. App.1990). The court observed that ordinarily a judgment is final for purposes of appeal in thirty days if no after-trial motions are filed, and that the Missouri statutes and Supreme Court rules allow ten days thereafter to file an appeal. Section 375.630.3, RSMo 1986, expressly provides that a liquidation order shall be a final judgment for purposes of appeal. The court held that § 375.630.3 determined the time in which appellant had to file its appeal. *Id.* at 429–30. *See also Ainsworth v. Old Sec. Life Ins. Co.,* 685 S.W.2d 583, 586 (Mo.App.1985) (the Supreme Court Rule on the right to intervene does not apply to an insurance insolvency action). We conclude from this that the clear meaning of the statutory provisions is that this expense of administration must first be approved by the court, and that neither the Special Deputy nor others can bind the court to a commitment of expenses of administration (Class I claims) without court approval.[3] Point denied.

Finally, appellant complains that, irrespective of which local rule may be applicable here, the trial court was not entitled to engage in de novo review by taking judicial notice of "unspecified matter within the trial court's administration of the Receivership" and that this standard of review exceeded its jurisdiction.

The purpose of the trial court's taking judicial notice of its previous case records was to explain its ruling that contracts made without court approval did not become "expenses of administration" and attain a greater priority.[4] The court's purpose was an attempt, albeit not successful, to convince appellant that the court was treating appellant equally in categorizing its claim as Class IV. Appellant claims that only Second Amended Rule 75 provided for de novo review, but that it could not be relied on because of the expiration of the ninety-day time limitation. Appellant further argues that neither of the prior versions of the rule could support the court's action because they do not provide for de novo review. We have decided that Second Amended Rule 75 was not in place for the purposes of this claim.

Regardless of which rule was applicable, we arrive at the same result. The court's obligation in either situation is to determine that the correct law is applied. The court concluded that while the Commissioner had used common law novation to arrive at its decision, the court was required to follow the insolvency statutes. In its decision, the trial court's taking of judicial notice of its record files does not mean that it disregarded the findings of the Commissioner as argued by appellant. We have held that the trial court decided the matter based upon the application of the insolvency statutes and not by failing to give due regard to the credibility findings of the Commissioner. The court arrived at a different legal conclusion than the Commissioner. It was legally obligated to apply the correct law. Point denied.

The judgment of the court is affirmed.

All concur.

---

3. In the trial court's conclusions, it took judicial notice of many of its previous orders treating other employment contracts, computer contracts, and lease claims as Class IV claims of the liquidation estate, and subordinating them to the higher priority claims of policyholders. The court's purpose was to show that, on previous occasions, a claim would not fall into the Class I category as an expense of administration unless the court had approved it, and that the appellant was being treated in a like manner.

4. The trial court took judicial notice of claims unrelated to this claim and the appellant filed a motion to strike, which was taken with the case. The motion is overruled.