**STATE of Missouri ex rel. Jay ANGOFF, Director of the Missouri Department of Insurance, acting as receiver of Professional Medical Insurance Company and Professional Mutual Insurance Company Risk Retention Group, Relator,**

**v.**

**The Honorable Lee E. WELLS, Judge, Circuit Court of Jackson County, Missouri, Division 8, Respondent.**

**No. WD 55915.**

Missouri Court of Appeals, Western District.

Jan. 26, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 2, 1999.

Application to Transfer Denied April 27, 1999.

Bruce E. Baty, Kansas City, for Relator.

Spencer J. Brown, Kansas City, for Respondent.

Before EDWIN H. SMITH, P.J., and SPINDEN and SMART, JJ.

PER CURIAM.

This is an original proceeding in prohibition wherein the relator, Jay Angoff, in his capacity as the Director of the Missouri Department of Insurance (the Director), seeks to prohibit the respondent, the Honorable Lee E. Wells, Circuit Judge of the Sixteenth Judicial Circuit, from allegedly exceeding his jurisdiction by prohibiting the Director from terminating Cynthia Clark Campbell as his special deputy in the liquidation estate of Professional Medical Insurance Company and Professional Mutual Insurance Company Risk Retention Group (collectively Pro–Med). The Director sought and received a preliminary writ in prohibition from this court, prohibiting the respondent from enforcing his orders prohibiting the Director from terminating the special deputy or "interfering by ex parte and unilateral conduct with her in the efficient and expeditious administration of [the Pro–Med] receivership."

The Director raises five points as to why the respondent exceeded his jurisdiction requiring us to make our writ absolute. He claims that the respondent exceeded his jurisdiction in preventing his termination of the special deputy and excluding him from the day-to-day affairs of the liquidation of Pro–Med because in doing so: (1) he exceeded the jurisdiction granted to the circuit court in the exclusive statutory scheme found in the "Insurers Supervision, Rehabilitation and Liquidation Act," §§ 375.1150 — 375.1246,[1] commonly referred to as the Insolvency Code

---

1. All statutory references are to RSMo 1994,  unless otherwise indicated.

(the IC), governing liquidations of insolvent insurance companies; (2) he encroached on the Director's primary jurisdiction granted him by the IC to conduct the liquidation; (3) he violated the Director's inherent power as the special deputy's appointing authority to terminate her; (4) he violated the Director's right as the special deputy's principal to withdraw her authority to act as his agent in administering the liquidation; and (5) he violated the requirement in the IC that there be only one receiver in the liquidation of an insolvent insurance company, who in the liquidation of Pro–Med must have been the relator, as the Director of Insurance.

The preliminary writ is made absolute.

### Facts

On April 7, 1994, the Director petitioned the court for an order to liquidate Pro–Med and to approve Cynthia Clark Campbell as a special deputy liquidator. On the same day, the petition was granted.

Over the course of the liquidation, various disputes arose between the Director and his special deputy, which led to a complete collapse of their working relationship as to the receivership. Having lost confidence in his special deputy, the Director notified her by letter that she was being relieved as special deputy liquidator, a copy of which was delivered to the respondent. In response, the special deputy sought and received a temporary restraining order from the respondent enjoining the Director from removing or attempting to remove her.

On May 14, 1998, the Director filed a motion to set aside the TRO. On June 2, 1998, the respondent entered an order in which he held that, under Missouri law, the Director of the Department of Insurance did not have the authority to remove a special deputy. He ordered the Director and his department from interfering by ex parte and unilateral conduct with the special deputy receiver in her administration of the receivership. He then declared the TRO moot.

On June 5, 1998, the Director filed a petition for writ of prohibition in this court. A preliminary writ was granted on June 8, which was amended on June 9. The first amended writ ordered the respondent "to refrain from enforcing, in any respect, your temporary restraining order of June 2, 1998, wherein you enjoined relator from removing or attempting to remove his Special Deputy Receiver." Thereafter, the Director took action and removed the special deputy from the Pro–Med offices. The case was thereafter briefed and argued before this court.

### I.

■ Because, in reviewing the five points raised by the Director as to why the respondent exceeded his jurisdiction in prohibiting the Director's termination of his special deputy liquidator in the liquidation estate of Pro–Med and with interfering with her day-to-day administration of the receivership, we find them to be part and parcel of essentially the same argument, that the circuit court's prohibition violated the statutory scheme of the IC, we will treat them collectively as one claim for discussion purposes. The issue presented by the Director for us to decide is whether the circuit court exceeded its jurisdiction in prohibiting him from terminating the special deputy and from interfering with her handling of the day-to-day affairs of the Pro–Med receivership.

"The statutory scheme for the receivership in liquidation of an insurance company ... sets up a self-contained and exclusive statutory scheme." *State ex rel. ISC Fin. Corp. v. Kinder*, 684 S.W.2d 910, 913 (Mo.App.1985) (*citing O'Malley v. Prudential Cas. & Sur. Co.*, 230 Mo.App. 935, 80 S.W.2d 896, 897 (Mo.App.1935)); *see also William Blair Realty Partners v. Transit Cas. Co. (In re Transit Cas. Co.)*, 900 S.W.2d 671, 675 (Mo. App.1995); *Melahn v. Continental Sec. Life Ins. Co.*, 793 S.W.2d 425, 430 (Mo.App.1990). This statutory scheme is found in the IC. The IC not only governs how the liquidation is to be carried out but also the actions of those who participate in the process, including the court. Accordingly, the respondent's jurisdiction in supervising the liquidation of Pro–Med was limited by the provisions of the IC. *Cullen v. Director of Revenue*, 804 S.W.2d 749, 750 (Mo. *banc* 1991).

Under the IC, there is no discretion vested in the court as to the appointment of a

liquidator. It mandates that an order to liquidate the business of a domestic insurer must appoint the Director and his successors as liquidator, subject to the supervision of the court. § 375.1176.1. The IC also makes provision for the appointment of a special deputy to assist the liquidator. In this respect, the IC provides as follows:

With the approval of the court, the director as liquidator may appoint a special deputy or deputies to act for him under sections 375.1175 to 375.1230. The special deputy shall not be an employee of the department of insurance. The special deputy shall have all powers of the liquidator granted by sections 375.1175 to 375.1230. The special deputy shall administer and liquidate the insolvent insurer subject to the general supervision of the director and the specific supervision of the court as provided in sections 375.1175 to 375.1230.

§ 375.1176.2. Pursuant to this section, a special deputy liquidator is appointed by the Director, but only with the approval of the court. Once appointed, the special deputy is subject to the general supervision of the Director, but like the Director, as the liquidator, is subject to the specific supervision of the court. The Director, as liquidator, and his special deputies, along with their employees, agents and attorneys, and all employees of the State of Missouri, when acting with respect to a liquidation, are considered to be officers of the court. § 375.1182.5.

There is no dispute between the parties that the relationship between the respondent and the special deputy had deteriorated to the point that they could no longer work together, as envisioned by the IC, on any level in conducting the day-to-day affairs of the Pro–Med receivership. This is clear from the Director's desire to terminate the special deputy and from the special deputy's attempt in April of this year to obtain a "[p]rotective order from further interference and harassment from [the Director]." The extent of the acrimony that ultimately existed between the Director and his special deputy is evinced by the special deputy's allegation in this writ proceeding that the relator had attempted to coerce her into committing illegal acts with respect to the administration of the receivership. Given this total collapse in the working relationship of the Director and his special deputy, it was obvious to even the most casual observer that the special deputy could no longer act for the Director as liquidator nor could she be supervised by him, as provided in § 375.1176.2.

The fallout from the failed relationship of the Director and the special deputy came to a head when the Director advised her of her termination. At that juncture, the court was faced with the fact that either the Director or the special deputy would have to be taken out of the loop as to the day-to-day affairs of the receivership, resulting in one of the two serving as the liquidator, subject to the court's supervision. By its orders, the court made it clear that it would be the special deputy, not the relator, who would be allowed to continue to act as liquidator and conduct the day-to-day affairs of the receivership, without any input from the relator, in effect, supplanting or removing him as liquidator. This, we find, he could not do without violating the exclusive statutory scheme found in the IC and thus, he acted in excess of his jurisdiction.

As noted, *supra*, the IC mandates that the Director be appointed the liquidator of the liquidation of an insolvent insurance company. And, as the Director contends, the IC did not authorize the court to remove or supplant him as the liquidator. With respect to this issue, this court held in *State ex rel. ISC Financial Corp. v. Kinder*, 684 S.W.2d at 913, that the circuit court exceeds its jurisdiction where it attempts to remove or prohibit the Director from conducting the affairs of a receivership. Although the IC does place the liquidation of insolvent insurance companies ultimately under the control of the court, as the respondent contends, this court recognized in *ISC* that the legislature intended that the Director, as the statutorily mandated liquidator, play an important and vital role in this process, a role that could not be supplanted or terminated by the court, in spite of its superintending control.

Admittedly, *ISC* did not involve the termination of a special deputy, as does the case at bar, but the removal of the Director and the appointment of a trustee to conduct the af-

fairs of the receivership. However, this distinction is without significance to the issue we are asked to decide inasmuch as the effect of the court's order here and the court's order in *ISC* are ultimately the same, the prevention of the Director from carrying out his statutory duties as liquidator, as set forth in § 375.1182.[2] Accordingly, we find that the respondent exceeded his jurisdiction in ordering that the Director could neither terminate the special deputy nor "interfer[e] by ex parte and unilateral conduct with [her] in the efficient and expeditious administration of [the] receivership." *Cullen*, 804 S.W.2d at 750.

■ The respondent contends that we should interpret § 375.1176 to find that the legislature never intended to confer on the Director the power to terminate his special deputies, but intended that this power, like the power to appoint, was subject to the approval of the court. In other words, he could not terminate the special deputy without approval of the court. In support of this contention, the respondent points out that the legislature included in § 375.1176.2 the provision that any appointment of a special deputy by the Director must be approved by the court, but did not include a provision that a special deputy, so appointed, served only "at the pleasure" of the Director. *See Van Kirk v. Board of Police Comm'rs*, 586 S.W.2d 350, 353 (Mo. banc 1979) (holding that the phrase, "at the pleasure of," connotes that the person so serving serves at the will of the designated authority). The respondent argues that the legislature could have easily included such a provision, but intentionally chose not to do so, reflecting an intent to deny the Director the power to terminate a special deputy, which he had appointed, without approval of the court. With respect to this argument, the respondent points to several statutes concerning the Director where the legislature included an "at-the-pleasure" provision, specifically: (1) § 375.1168, authorizing the appointment by the Director of special deputies in a "rehabilitation," as op-

posed to a liquidation, of an insurance company, such deputies to serve "at the pleasure of the director"; (2) § 374.020.1, providing that the Director "shall be subject to removal from office by the governor at his pleasure"; and (3) § 374.130, providing that the Director's chief clerk is to serve at his pleasure. The respondent also notes, as to § 375.1168, that an appointment authorized under this section is not subject to the approval of the court. As further support for his argument, the respondent points to the fact that much of the IC of Missouri resembles the National Association of Insurance Commissioners (NAIC) Model Act, which at the time the new IC was adopted by our legislature in 1991 included § 24 A(1), providing that the "special deputy shall serve at the pleasure of the liquidator," which was not included in § 375.1176, although similar language appearing in § 18 of the Model Act was included in § 375.1168, concerning the appointment of special deputies in rehabilitations.

> Where the statute is not explicit, nevertheless, but confers powers and duties in general terms, resort to the necessary implications of the language to determine legislative intent is permitted. An implied power within this meaning is the power necessary for the efficient exercise of the power necessary for the efficient exercise of the power expressly conferred. In that sense, that which is implied in a statute is as much a part of it as that which is expressed. The rule that extends a statute by necessary implication has been given frequent application in the construction of laws delegating powers to public officers and administrative agencies.

*Missouri Ethics Comm'n v. Wilson*, 957 S.W.2d 794, 798 (Mo.App.1997) (citations omitted). Although § 375.1176 explicitly authorizes the Director to appoint special deputies, subject to the approval of the court, it makes no provision for their termination. As such, we are required to interpret the statute to determine the legislature's intent with re-

---

**2.** Section 375.1182 contains twenty-one specific duties of the liquidator, ranging from holding hearings to auditing the books of the insolvent insurer or its agents. This section also provides a catchall provision that authorizes the liquidator

to "exercise all powers now held or hereafter conferred upon receivers by the laws of this state not inconsistent with the provisions of sections 375.1150 to 375.1246." § 375.1182.1(22).

spect to whether a special deputy appointed by the Director, pursuant thereto, can be terminated by the Director without the approval of the court.

In interpreting statutes to ascertain the intent of the legislature, we look to the language used, giving the words their plain and ordinary meaning. *State ex rel. Riordan v. Dierker*, 956 S.W.2d 258, 260 (Mo. banc 1997). The courts are without authority to read into a statute a legislative intent which is contrary to the intent made evident by the plain and ordinary language employed in the statute. *Kearney Special Rd. Dist. v. County of Clay*, 863 S.W.2d 841, 842 (Mo. banc 1993). Courts can only resort to rules of statutory construction when the intent of the legislature cannot be ascertained from the plain language of the statute and is ambiguous. *Bosworth v. Sewell*, 918 S.W.2d 773, 777 (Mo. banc 1996); *Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 19 (Mo. banc 1995). When the intent of the legislature cannot be determined from the plain and ordinary meaning of the language used and is ambiguous, the statute should be given a reasonable reading and construed in a manner consistent with the legislature's purpose in enacting it. *Sullivan v. Carlisle*, 851 S.W.2d 510, 512 (Mo. banc 1993).

With respect to the respondent's argument that the noted differences between §§ 375.1176 and 375.1168 reflect a legislative intent to require terminations of special deputy liquidators to be approved by the court, we note that both sections are part of the "Insurers Supervision, Rehabilitation and Liquidation Act," enacted in 1991. § 375.1150.1. As such, the respondent is correct when he asserts that in construing § 375.1176, to determine the intent of the legislature as to whether the Director could terminate a special deputy liquidator without approval of the court, we can consider the differences in wording between these two sections. *See Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992) (holding that the provisions of an entire legislative act must be construed and considered together and, if possible, all provisions must be harmonized and every clause given some meaning). Reading these two sections to-

gether, he is also correct in asserting that the inclusion of the "at-the-pleasure-of-the-Director" provision in § 375.1168 and its omission in § 375.1176 may be interpreted as an intentional exclusion, applying an auxiliary statutory rule of construction known as *expressio unius est exclusio*, demonstrating a legislative intent that the Director was not to have the power to unilaterally terminate a special deputy liquidator. *Angoff v. M & M Management Corp.*, 897 S.W.2d 649, 655 (Mo. App.1995). However, it should be noted that this rule of construction is to be applied with great caution. *Id.*

The respondent's argument, that the legislature never intended for the Director to have the power to terminate a special deputy liquidator without approval of the court, is based on: (1) the inclusion of the provision in § 375.1176 that the appointment by the Director of a special deputy had to be approved by the court; and (2) the omission of a provision in § 375.1176 that the special deputy served at the pleasure of the Director. As to the inclusion in § 375.1176 of the court-approval provision, the United States Supreme Court recognized in *Myers v. United States*, 272 U.S. 52, 119, 47 S.Ct. 21, 26, 71 L.Ed. 160, 167 (1926), the statutory rule of construction that the power of removal is incident to the power of appointment in the context of the power of the United States Senate to approve certain appointments by the executive branch. The reason given by the court for such a rule was "that those in charge of and responsible for administering functions of government, who select their executive subordinates, need in meeting their responsibility to have the power to remove those whom they appoint." *Id.* Given the underlying basis for the rule, the logic in applying it in our case is not as compelling inasmuch as the legislature, by the plain language used in § 375.1176, clearly indicated an intent to make a special deputy liquidator subject to the supervision of both the Director and the court. However, the rule and its logic does persuade us that the legislature in § 375.1176, in empowering the Director as liquidator, not the court, to request and appoint a special deputy liquidator, never intended for the court, in effect, to be empowered to unilaterally determine that a special

deputy will continue in office, despite the fact he or she could not continue to act for and in cooperation with his or her appointing authority, the Director as the statutorily mandated liquidator, or subjugate himself or herself to the Director's statutory supervision in the day-to-day administration of the receivership.

As to the second prong of the respondent's argument, that the failure to include a provision in § 375.1176 that the special deputy was to serve at the pleasure of the Director indicated an intent to place the ultimate decision of the special deputy's termination with the court, although we find it persuasive, we do not think it wins the day for the respondent. It is true enough that had the legislature intended for the Director to have the sole power to terminate a special deputy, it could have provided for the same in § 375.1176, as it did in § 375.1168. However, it is equally true that had the legislature intended for any termination to require the approval of the court, it could have easily included such a provision. It did not.

Because we are left unpersuaded as to the intent of the legislature in regard to the issue in question based on a reading of the plain language of the statute and the statutory rules of construction urged by the respondent, we must revert to the overarching statutory rule of construction that requires us to give the statute a reasonable reading and construe it in a manner consistent with the legislature's overall purpose in enacting it. *Sullivan*, 851 S.W.2d at 512. Applying this rule, we believe that the legislature, in providing that the Director as liquidator could appoint a special deputy if he determined that he needed assistance to fulfill his statutory duties in a liquidation, subject to the approval of the court, intended that a special deputy in his or her appointment and his or her continuing in office had to be acceptable to both the Director and the court. In light of the omission in the statute with regard to the circumstance of a special deputy's termination or removal, we believe that § 375.1176, when viewed in the context of the overall legislative purpose for its enactment, this same dual acceptability or consensus requirement was intended by the legislature to apply to that circumstance, requiring both the Director and the court to agree in order for a special deputy liquidator to continue in office. Stated another way, the intent was to allow either the Director or the court to terminate the special deputy where they cannot agree on his or her continuing in office. To hold as the respondent contends, would result in the unreasonable situation that exists in the instant case, whereby the Director, who cannot be supplanted or removed as liquidator by the court, *ISC*, 684 S.W.2d at 913, has forced upon him a special deputy in whom he has no faith to act on his behalf and whom he cannot, as a practical matter, supervise as to the day-to-day affairs of the receivership. The law favors a construction that avoids such an unreasonable result. *David Ranken, Jr. Technical Inst. v. Boykins*, 816 S.W.2d 189, 192 (Mo. *banc* 1991).

The overriding theme of the respondent's argument is that the court, not the Director, has the ultimate authority to control the liquidation and as such should have the sole authority to determine whether a special deputy liquidator can continue in office. This argument is predicated on the notion that the court requires this authority in order to insure fairness and impartiality in protecting the myriad of interests that are at stake in a liquidation of an insolvent insurance company and that the court, not the Director, is particularly well suited for this purpose given the fact it is apolitical. While we would agree with the general principle that the courts are well suited to insure fairness and impartiality in any given proceeding, we fail to see how the removal of a particular special deputy liquidator would prevent the court from insuring that the liquidation continues to be conducted in a fair and impartial manner in light of its specific supervisory power to ultimately control the liquidation. Further, while we appreciate the paramount importance to the court of the integrity and qualifications of the special deputy, we fail to see how this concern cannot be met as long as the court has the authority to approve or disapprove of any special deputy suggested by the Director. And, other than the general comfort level of the respondent with the special deputy in her handling of the day-to-day affairs of the re-

ceivership, the respondent does not articulate any reasons as to why the Director could not properly conduct the affairs of the receivership with its supervision, with or without the appointment of a new special deputy.

For the reasons stated, we find that the respondent exceeded its jurisdiction in preventing the Director from terminating the special deputy liquidator and from interfering with her handling of the day-to-day affairs of the Pro–Med receivership. Hence, our preliminary writ of prohibition is made absolute pursuant to Mo. Const. Art. V, § 4.1, § 530.010, and Rule 84.22(a), whereby, the respondent is prohibited from enforcing or entering any order enjoining the Director from terminating the special deputy and, in the unlikely event she is not terminated, by the Director, from interfering with her handling of the day-to-day affairs of the Pro–Med receivership to the extent it would contravene the authority granted to the Director as liquidator by the IC.