

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| LAND CLEARANCE FOR REDEVELOPMENT AUTHORITY OF THE CITY OF ST. LOUIS, | ) ) ) ) | No. ED107081 |
| Respondent, | ) ) | Appeal from the Circuit Court of the City of St. Louis |
| vs. | ) ) | |
| | ) | Honorable David L. Dowd |
| James Townsend Osher, | ) | |
| | ) | |
| Appellant. | ) | Filed: April 21, 2020 |

### Introduction

James Townsend Osher ("Appellant") appeals from the trial court's judgment awarding him $573,000 as compensation for the Land Clearance Redevelopment Authority ("LCRA") condemning his property ("Property") in the City of St. Louis and assessing $21,207.13 in costs against him. Appellant brings eight points on appeal. First, Appellant argues the circuit court erred in failing to assign his case to a general division once exceptions were filed. Second, Appellant argues the circuit court erred in denying his request for a new judge. Third, Appellant argues the circuit court erred in assessing costs against him. Fourth, Appellant argues the circuit court erred in denying his request for a homestead allowance. Fifth, Appellant argues the circuit court abused its discretion when it excluded evidence of the amount Appellant paid a leaseholder

for the extinguishment of its leasehold interest after the Property's condemnation. Sixth, Appellant argues the circuit court abused its discretion when it excluded photographic evidence of Appellant's experience in the construction and hotel industry, excluded photographic evidence of recent developments in the City of St. Louis, and criticized him in front of the jury. Seventh, Appellant argues the circuit court abused its discretion when it admitted photographs offered by LCRA depicting his Property after the date of the taking. Lastly, Appellant argues the circuit court erred in allowing LCRA to cross-examine one of Appellant's witnesses regarding an alleged fraudulent tax credit scheme to purchase the Property and other properties and to call a witness to give opinion testimony regarding the same. We affirm.

## Factual and Procedural Background

### Pre-Trial

In December 2015, LCRA brought a condemnation action to take Appellant's Property, known as the "Buster Brown Building," located at 1516-1530 North Jefferson Avenue in the City of St. Louis, and over 500 other properties, to construct a new facility for the National Geospatial-Intelligence Agency ("NGA"). The case was initially assigned to Judge David Dowd in Division 2 of the St. Louis City Circuit Court, who set a condemnation hearing. On December 30, 2015, the then-presiding judge of the St. Louis City Circuit Court issued an order ("December 2015 Order") stating Appellant's case was "specially assigned to Division 2 for all further proceedings." Appellant was served with process on March 18, 2016. On April 4, 2016, a commissioners' hearing was held to determine the fair market value of the Property, which neither Appellant nor his attorney attended. In May 2016, the commissioners awarded $817,589.59. LCRA deposited the award, with interest, in the circuit court and took title to the Property. LCRA filed its exceptions to the commissioners' award on May 31, 2016, and

2

Appellant filed his exceptions to the commissioners' award on June 13, 2016.  On July 7, 2016, LCRA took the Property.

In November 2016, Appellant requested the case be transferred to Division 1 and assigned to a trial judge under Local Rule 66.3.1[1] because exceptions were filed in May and June 2016.  In December 2016, Appellant again requested the case be transferred to Division 1 and assigned to a trial judge under Local Rule 66.3.1, seeking clarification from the circuit court regarding the applicability of Local Rule 66.3.1 in condemnation proceedings.  The circuit court denied Appellant's requests, stating "trial of the exceptions had been previously assigned to Judge David Dowd on December 30, 2015."  On February 8, 2017, Appellant requested a change of judge under Supreme Court Rules 55.01(b) and 55.01(d),[2] which the circuit court denied. Appellant then filed a Writ of Prohibition in this Court and the Missouri Supreme Court challenging the circuit court's denial of his requests for pre-assignment under Local Rule 66.3.1 and change of judge.[3]  Both writs were denied.  In September 2017, Appellant requested Judge Dowd recuse himself, claiming Judge Dowd was "too invested in the Condemnation Case to

---

[1] All Local Rule references are to the St. Louis City Circuit Court's Local Rules (2015), unless otherwise indicated. Local Rule 66.3.1 provides:

> In condemnation proceedings pursuant to general statutes where exceptions to the commissioners' report are filed, the case shall be transferred to Division 1 for assignment to a general division in the same manner as any other civil jury case.
> The trial shall be handled as to each sub-file in the same manner in which other civil jury causes are handled.

[2] All Supreme Court Rule references are to the Missouri Supreme Court Rules (2015), unless otherwise indicated. Appellant's motion requesting a change of judge relied on Supreme Court Rule 55.01.  However, Supreme Court Rule 55.01 governs the pleadings required in a case, not a change of judge.  *See* Supreme Court Rule 55.01 ("There shall be a petition and an answer; and there shall be a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party petition, if a person who was not an original party is summoned under the provisions of Rule 52.11; and there shall be a third-party answer, if a third-party petition is served.  A defense consisting of an affirmative avoidance to any matter alleged in a preceding pleading must be pleaded.  No other pleading shall be required except as ordered by the court.").  To the extent Appellant relies on Supreme Court Rule 55.01 in moving for a change of judge, he is mistaken.  Supreme Court Rule 51.05 governs requests for a change of judge.  *See* Supreme Court Rule 51.05.

[3] *See State ex rel. Osher v. Mullen*, ED105463 and *State ex rel. Osher v. Mullen*, No. SC96500.

3

have the appearance of independent judgment in the Exception Case" and exhibited an "inherent bias" favoring LCRA. Appellant's request for recusal was also denied.

<em>Trial</em>

In May 2018, the exceptions filed by LCRA and Appellant proceeded to a jury trial, which lasted seven days.

Appellant's Evidence

Appellant testified on his own behalf. He testified he began renting the Property in 1993 and bought the Property in 1996 for $200,000. Appellant testified the Property's highest and best use was for redevelopment as a boutique hotel and the Property was worth $5.5 million on the date of the taking. Appellant testified he asked for the Property to be registered in the National Historic Registry in 2005 to "sav[e] the structure if anything should ever happen." Appellant testified the Property was valuable to himself, the City, and the neighborhood because of its history. Appellant sought to admit photographic evidence of his experience in the construction and hotel industry and nearby developments in the City of St. Louis during his testimony, but the trial court excluded such evidence.

Appellant also testified regarding an earlier sale of the Property from JTO, LLC ("JTO"), a company Appellant formed, to NorthSide Regeneration, LLC ("NSR"), a company owned by Paul McKee, for $3.75 million in 2011 (the "2011 Sale"). Appellant testified he transferred title to the Property to JTO. He testified NSR purchased the Property from JTO in an arms-length transaction. He testified the sale was structured as a "sale-leaseback" or "triple net lease," where NSR would own the Property but lease the Property to another company called Wilco Leasing, which was created by Appellant's then-wife. Under the triple net lease, Wilco Leasing would pay all insurance, taxes, repairs, and utility bills and NSR would collect $375,000 in rent

4

payments per year. Appellant testified he self-financed the transaction and NSR agreed to pay him $3.75 million over five years at a 10% interest rate. Appellant would retain possession of the Property. He testified he did not consider the $3.75 million purchase price inflated.

On cross-examination, Appellant testified he received no payment from NSR on the closing date. He testified he knew McKee was going to receive "a lot" of tax credits for NSR's $3.75 million purchase of the Property.[4] He testified he could not recall an email he sent to NSR in November 2011 that stated NSR owed him a "[o]ne time principal payment of 50 percent of tax credits in Q1 2012." Appellant testified he received $591,000 from NSR in January 2012 but denied the source of the $591,000 was tax credits. Appellant testified the Department of Economic Development disqualified the tax credits it previously granted McKee in March 2013 and all payments from NSR to JTO stopped in March 2013. Appellant testified he received $733,000 from NSR as of March 2013. Appellant agreed he and McKee thereafter "unwound" the 2011 Sale and conveyed the Property back to Appellant. On re-direct examination, Appellant testified he did not recall the Department of Economic Development disapproving of the owner-financed, sale-leaseback structure of the transaction between JTO and NSR.

Appellant also sought to testify about a settlement he entered with AT&T Mobility ("AT&T"), a company that rented a space for a cell tower on the Property's roof, after the Property was condemned. Appellant sought to testify he paid AT&T $65,000 to resolve any claims arising from the termination of AT&T's lease with Appellant due to the Property's

---

[4] Appellant, McKee, and various other witnesses testified that, in 2007, the General Assembly enacted the "Distressed Areas Land Assemblage Tax Credit Act ("DALATC"). *See* § 99.1205 (2007). The DALATC provided that developers who purchased land in an economically distressed area could apply to the Department of Economic Development to gain access to tax credits, which would pay for "an amount equal to fifty percent of the acquisition costs, and one hundred percent of the interest costs incurred for a period of five years after the acquisition of an eligible parcel." § 99.1205.3. The DALATC provided the funds generated from the use of the tax credit must be used for redevelopment activities in the economically distressed area. § 99.1205.2(b)(a).

condemnation and Appellant owed AT&T nothing further. The circuit court disallowed this testimony, stating "I think it is a matter that can be handled after the verdict in this trial."

Appellant next called William Otto Spence, his appraiser, as a witness. Spence testified he conducted a lengthy inspection of the Property four times but observed the Property on several other occasions. Spence testified the fair market value of the Property at the time of the taking was $4.93 million. Like Appellant, Spence testified the highest and best use of the Property was for conversion into a "lifestyle or boutique hotel." In valuing the Property, Spence considered the 2011 Sale price of $3.75 million. Spence testified he met with McKee to discuss the 2011 Sale. He testified McKee told him the sale was conducted at arms-length and represented the market value of the Property. Spence testified the 2011 Sale was not a "sham sale" and he considered the source of NSR's funding from tax credits irrelevant to his valuation of the Property. Spence testified he based his appraisal of the Property upon what was occurring in the Property in 2016 before Appellant moved out. He explained his appraisal included some photographs taken of the Property after the date of the taking because Appellant requested he wait until Appellant moved out of the Property to take photographs. Spence also based his valuation, in part, on the Property's historic significance and its status in the National Historic Registry.

Appellant also called McKee as a witness. McKee testified NSR purchased the Property from JTO in 2011 for $3.75 million with the triple net lease structure Appellant described in his earlier testimony. He testified he received tax credits from the 2011 Sale from the Department of Economic Development, but they were later denied. McKee testified NSR "unwound" the transaction with JTO after NSR paid JTO approximately $700,000. McKee testified the State asked him and Appellant to unwind the transaction between NSR and JTO. On

6

cross-examination, McKee denied he would have been willing to overpay for the Property if he got 50% of the sale price back in tax credits. McKee also testified NSR entered into other transactions with Appellant to purchase other properties in the City of St. Louis. McKee testified these other transactions involved a million-dollar purchase price, no money exchanging hands at the closing, and a large payout of tax credits.

LCRA's Evidence

LCRA called Laura Costello, the Director of Real Estate for the St. Louis Development Corporation, as a witness. Costello testified she inspected the Property in September 2016. She testified she saw chipped paint, nonfunctioning windows, and holes in the floor during her inspection. Costello admitted her inspection took place after the date of the taking. LCRA admitted photographs of Costello's inspection of the Property into evidence. Costello testified she never instructed McKee to unwind the transaction between NSR and JTO.

LCRA also called Kevin Schoenborn, an environmental company project manager, as a witness. Schoenborn testified he inspected the Property in March 2017 after Appellant moved out. He testified his inspection revealed damage around the skylights, chipped paint, nonfunctioning windows, a spongy roof, and tuck pointing issues. He also testified he observed the Property had poor structural integrity.

LCRA also called Tom Mueller as a witness. Mueller testified he previously owned the Property and sold it to Appellant in 1996. Mueller testified he saw the inside of the Property after Appellant moved out. He testified the Property had no chipped paint, non-functioning windows, or water damage before he sold it to Appellant. Mueller testified the Property was not in better condition than when he sold it to Appellant.

7

LCRA called John Neff, its appraiser, who testified the fair market value of the Property at the time of the taking was $573,000 and the Property's highest and best use was as a warehouse. He testified he inspected the building in January and September 2016 and found it was in fair to average condition. He agreed with Schoenborn the Property had poor structural integrity. Neff testified the fact the Property belonged to the National Historic Register did not factor into his appraisal. LCRA also called several expert witnesses who testified the Property's highest and best use was not for a hotel, as it had a poor location that experienced little traffic and would cost between $200,000-400,000 per room to convert the Property into a hotel.

Lastly, LCRA called Sallie Hemenway, the Division Director at the Missouri Department of Economic Development, as a witness to discuss the 2011 Sale and the sales of other properties between NSR and Appellant. Hemenway testified the State initially issued tax credits to McKee for his acquisition of the Property in the 2011 Sale. Hemenway testified the State rescinded the tax credits previously granted for the 2011 Sale after discovering the improper owner-financed, sale-leaseback structure of the transaction between JTO and NSR.

*Jury Verdict and Homestead Allowance*

The jury returned a verdict awarding Appellant $573,000, the value suggested by LCRA; $244,589.59 less than the commissioners' award. Following trial, Appellant asked the circuit court to apply a homestead allowance under section 523.039[5] to increase the jury's verdict because he alleged the Property was his primary residence. The parties waived an evidentiary hearing on the homestead allowance issue and filed a Joint Statement of Facts containing a stipulation of the evidence that would have been presented at a hearing. The Joint Statement of

---

[5] All statutory references are to RSMo (2015), unless otherwise indicated.

Facts asked the circuit court to "determine the issues based upon the evidence, the evidence adduced at trial, and the arguments of counsel."

The parties stipulated Appellant would have testified as follows. He used the fourth floor of the Property, which included a residential loft, as his primary residence since the summer of 2015. From 2005 until the summer of 2015, his primary residence was in Florida. His residential loft in the Property was not in violation of any zoning laws. He did not believe he needed a permit to live in the Property. He filed state income taxes in Missouri in 2015 and 2016: filed a city earnings tax in Missouri in 2015 and 2016; registered to vote in Missouri in 2015; obtained a Missouri non-driver's license because he maintained a commercial driver's license in Florida; and listed the Property's address on his health and car insurance.[6] Appellant did not own the Property when he moved into it in the summer of 2015 or when LCRA sent NSR a sixty-day notice expressing its intent to acquire the Property by eminent domain in November 2015. He owned the Property only after NSR and JTO agreed to "unwind" the 2011 Sale and grant title to Appellant. In the closing documents memorializing the "unwind" of the 2011 Sale, Appellant listed his Florida address as his mailing address.

When Appellant moved to the Property in 2015, he did not abandon his Florida home or certain aspects of his Florida residency. He kept his Florida driver's license and renewed it in November 2017. He listed his Florida address as his home address on his 2014 Federal Income Tax Return, which was filed in September 2015 while he claimed to live in the Property. The Property was zoned for industrial use and was not approved for residential use. The City of St. Louis never issued an occupancy permit for anyone to reside at the Property. Appellant was aware the City of St. Louis' zoning laws prohibited him from living at the Property, but he

---

[6] Appellant also produced these documents, and others, as exhibits and attached them to the Joint Statement of Facts.

thought it was legal for him to do so because he was a security guard at the Property. However, there is no "security guard" exception in the City of St. Louis' Municipal Code. From July 2015 to January 2017, he repeatedly left town and spent more time in Florida than Missouri.

The parties also stipulated Costello would have testified she regularly drove by the Property during the times Appellant claimed to reside there but saw no indication Appellant occupied the Property. She inspected the Property in September 2016 and observed some appliances on the fourth floor were not plugged in to any power source. The parties also stipulated Jennifer Kaniecki, a Relocation Specialist with Development Resource Partners, LLC, would have testified Appellant never provided her with any proof he was a full time resident at the Property and, in her opinion, if Appellant ever did reside in the Property, he did so purposefully to attempt to obtain a homestead allowance and/or other relocation benefits.

After considering the evidence presented by both parties, the circuit court denied Appellant's request for a homestead allowance, finding the Property was "not a dwelling within the meaning of §523.039"; "[Appellant]'s testimony that the [Property] was his primary place of residence [wa]s not credible"; and "the facts lead to the conclusion that the [Property] was not his primary place of residence."

*Assessment of Costs*

Following trial, LCRA also filed a Bill of Costs, which asked the circuit court to tax costs incurred after the commissioners' award was entered against Appellant. LCRA's Bill of Costs requested $21,207.13 be taxed against Appellant "pursuant to Missouri Supreme Court Rule 77.01."[7] Appellant opposed LCRA's Bill of Costs, arguing Supreme Court Rule 77.01 did not

---

[7] Supreme Court Rule 77.01 provides: "In civil actions, the party prevailing shall recover his costs against the other party."

apply in condemnation cases and Supreme Court Rule 86.09[8] controlled instead. Appellant argued, under either Rule, LCRA failed to justify its request that costs be taxed against Appellant. The circuit court ordered Appellant to pay costs in the amount of $21,207.13.

On July 18, 2018, the circuit court entered judgment on the verdict.

Appellant appeals.

## Discussion

*Point I: Assignment to a General Division After Filing Exceptions*

Appellant's first point argues the circuit court erred in failing to assign his case to a general division once exceptions were filed. He argues Local Rule 66.3.1 mandates that, once exceptions to the commissioners' report are filed, the circuit court must transfer the case to Division 1 for assignment to a general division. He argues the circuit court's December 2015 Order specially assigning the case to Judge Dowd was issued *before* either party filed exceptions. Therefore, he argues the circuit court's December 2015 Order provided "no legitimate basis for bypassing" Local Rule 66.3.1.

<u>Standard of Review</u>

On appeal, we defer to the circuit court's construction of its local rules because "[t]he court that enunciates a rule is the best judge of that rule." *James v. James*, 853 S.W.2d 425, 430 (Mo. App. S.D. 1993) (internal citation omitted) (quoting *Mid. Materials Co. v. Village Dev. Co.*, 806 S.W.2d 477, 484 (Mo. App. S.D. 1991)). "[A] higher court is reluctant to interfere with a

---

[8] Supreme Court Rule 86.09 provides:

> The cost of the condemnation proceeding shall be paid by the condemner, up to and including the filing and copying of the report of the commissioners; and the court, as to any costs made by subsequent litigation, may make such order as in its discretion may be deemed just. The court shall allow the commissioners a reasonable compensation for their services, which shall be taxed as costs in the proceeding.

11

court's construction of its own rule." *In re Transit Cas. Co.*, 900 S.W.2d 671, 674 (Mo. App. W.D. 1995) (citing *State ex rel. Logan v. Ellison*, 267 Mo. 321, 184 S.W. 963, 964 (Mo. 1916)).

<u>Analysis</u>

Supreme Court Rule 50.01 authorizes circuit courts to adopt local rules to "govern[ ] the administration of judicial business," so long as they are not "inconsistent with the rules of [the Supreme Court], the Constitution or statutory law in force." *State ex rel. Burns v. Gillis*, 102 S.W.3d 66, 70 (Mo. App. W.D. 2003) (alterations in original) (citing Supreme Court Rule 50.01). The St. Louis City Circuit Court adopted Local Rule 66 to govern the administration of judicial business in condemnation proceedings. Local Rule 66.1 provides condemnation cases shall be initially assigned to the equity division. Local Rule 66.2 provides: "If exceptions are filed, the clerk shall establish a sub-file for the particular parcel to which the exception relates . . . and each sub-file shall remain assigned to the judge who entered the order of condemnation." Local Rule 66.3.1 then provides:

> In condemnation proceedings pursuant to general statutes ***where exceptions to the commissioners' report are filed, the case shall be transferred to Division 1 for assignment to a general division*** in the same manner as any other civil jury case. The trial shall be handled as to each sub-file in the same manner in which other civil jury causes are handled.

(emphasis added). The St. Louis City Circuit Court has also adopted Local Rule 6.2.1, which states: "From time to time and in the presiding judge's discretion, the presiding judge may assign extraordinary cases requiring individual and continuing attention to general divisions for trial setting, pretrial motions and trial." Local Rule 6.2.1.

Here, the circuit court initially assigned the case to Judge Dowd in Division 2, the equity division, when LCRA filed its condemnation petition. On December 30, 2015, the then-presiding judge for the St. Louis City Circuit Court issued its order stating Appellant's case was

12

"specially assigned to Division 2 for all further proceedings." On April 4, 2016, Judge Dowd entered the order of condemnation. On May 31, 2016, LCRA filed its exceptions, and on June 13, 2016, Appellant filed his exceptions. Upon the filing of exceptions, the circuit court did not transfer the case to Division 1 for assignment to a general division. In December 2016, when Appellant asked the circuit court to clarify the application of Local Rule 66.3.1 to his case, the circuit court stated the "trial of the exceptions had been previously assigned to Judge David Dowd on December 30, 2015."

Appellant argues the circuit court violated Local Rule 66.3.1 when it failed to transfer the case to Division 1 for assignment to a general division once exceptions were filed. We disagree. The circuit court construed its Local Rules and determined the case did not need to be assigned when exceptions were filed because of the December 2015 Order. We "defer[] to the trial court with respect to its interpretation and application of its local rules relating to setting cases for trial." *James*, 853 S.W.2d at 430. Further, Appellant's case was one part of a large, complicated and extraordinary proceeding involving the acquisition of over 500 properties on an almost 100-acre site in the City of St. Louis. It was within the authority of the then-presiding judge for the City of St. Louis Circuit Court to specially assign Appellant's case to Judge Dowd "for all further proceedings" under the circumstances. *See* Local Rule 6.2.1.

Point I is denied.

*Point II: Application for Change of Judge*

Appellant's second point argues the circuit court erred in denying his application for a change of judge without cause.

<u>Standard of Review</u>

"The denial of a motion for change of judge without cause is an issue of law that the appellate court reviews *de novo*." *Corozzo v. Wal-Mart Stores, Inc.*, 531 S.W.3d 566, 570 (Mo. App. W.D. 2017) (citing *Gordon ex rel. G.J.E. v. Epperly*, 504 S.W.3d 836, 844 (Mo. App. W.D. 2016)).

<u>Analysis</u>

"A civil litigant has a 'virtually unfettered right to disqualify a judge without cause on one occasion.' Thus, the presentation of a timely application for change of judge under [Supreme Court] Rule 51.05 requires a prompt change of judge." *State ex rel. Stockman v. Frawley*, 470 S.W.3d 401, 404 (Mo. App. E.D. 2015) (citing *State ex rel. Walters v. Schaeperkoetter*, 22 S.W.3d 740, 742 (Mo. App. E.D. 2000)). Under Supreme Court Rule 51.05, an application for change of judge "must be filed within 60 days from service of process or 30 days from the designation of the trial judge, whichever time is longer." Supreme Court Rule 51.05(b). When a party files an application for change of judge, the trial court must grant the application and transfer the case if the application was timely filed and no other member of the applicant's "class" previously obtained a change of judge under Supreme Court Rule 51.05. *State ex rel. Manion v. Elliott*, 305 S.W.3d 462, 464 (Mo. banc 2010). In condemnation cases involving multiple defendants, as to which separate trials are held, each separate trial to determine damages shall be treated as a separate case for purposes of change of judge." Supreme Court Rule 51.05(d).[9]

---

[9] Here, both parties conceded during oral argument Appellant was the only defendant to request a trial to determine damages and no other defendant requested a change of judge. Therefore, Supreme Court Rule 51.05(d) is not in issue.

Appellant's request for a change of judge was untimely. Judge Dowd was designated trial judge on December 30, 2015, through the December 2015 Order. Appellant was served with process on March 18, 2016. Therefore, Appellant must have filed his application for change of judge by May 18, 2016, to avail himself of his right to disqualify Judge Dowd under Supreme Court Rule 51.05. He failed to do so. Appellant argues his application for change of judge was timely because it was filed "less than 30 days after the trial court made clear in its final order that it was going to assume jurisdiction over this exceptions case in violation of Local Rule 66.3.1" on January 9, 2017. However, the fact Appellant did not realize Judge Dowd was the judge designated to his case until January 9, 2017, is irrelevant and does not alter the deadlines stated in Supreme Court Rule 51.05(b). "The designation of the trial judge occurs when the judicial transfer order is filed in the circuit court, not when the parties are notified of a change in judge." *Corozzo*, 531 S.W.3d at 570-71 (internal quotations and citations omitted). Because Appellant failed to timely apply for a change of judge, the circuit court did not err in denying his request.

Point II is denied.

*Point III: Assessment of Costs*

Appellant's third point argues the circuit court erred in assessing $21,207.13 in costs against him. He argues the circuit court erroneously relied on Supreme Court Rule 77.01 in assessing costs, which provides, "[i]n civil actions, the party prevailing shall recover his costs against the other party," instead of Supreme Court Rule 86.09, which provides, in condemnation proceedings, "the court, as to any costs made by subsequent litigation, may make such order as in its discretion may be deemed just." He contends the circuit court must have erroneously relied on Supreme Court Rule 77.01 because LCRA's Bill of Costs motion requested costs be assessed

15

against him "pursuant to Missouri Supreme Court Rule 77.01" and the trial court overruled his objection that Supreme Court Rule 77.01 does not apply in a condemnation proceeding. He further argues, even if the circuit court assessed costs against him under Supreme Court Rule 86.09, its award of costs was improper because LCRA had a duty to justify the award of costs and failed to do so.

Standard of Review

A circuit court's award of costs is a matter within its sound discretion, "and we will not disturb the award absent a showing of an abuse of discretion." *Green v. Plaza in Clayton Condo. Ass'n*, 410 S.W.3d 272, 284 (Mo. App. E.D. 2013) (internal citations omitted). "A court abuses its discretion when its action is so clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." *Oliver v. Ford Motor Credit Co., LLC*, 437 S.W.3d 352, 366 (Mo. App. W.D. 2014) (quoting *Kopp v. Home Furnishing Ctr., LLC*, 210 S.W.3d 319, 329 (Mo. App. W.D. 2006)).

Analysis

Condemnation proceedings are governed by Supreme Court Rule 86. *See State ex rel. Washington Univ. Med. Ctr. Redevelopment Corp. v. Gaertner*, 626 S.W.2d 373, 377 (Mo. banc 1982), abrogated on other grounds by *Clay Cty. Realty Co. v. City of Gladstone*, 254 S.W.3d 859 (Mo. banc 2008). "Other rules of civil procedure apply in condemnation proceedings only when they are consistent with [Supreme Court] Rule 86." *Id.* Supreme Court Rule 86.09 provides a procedure for assessing costs in condemnation proceedings:

> The cost of the condemnation proceeding shall be paid by the condemner, up to and including the filing and copying of the report of the commissioners; and the court, as to any costs made by subsequent litigation, may make such order as in its discretion may be deemed just. The court shall allow the commissioners a reasonable compensation for their services, which shall be taxed as costs in the proceedings.

16

Supreme Court Rule 86.09.

Appellant argues the circuit court erroneously relied on Supreme Court Rule 77.01 instead of Supreme Court Rule 86.09 in assessing costs. We disagree. While LCRA's Bill of Costs requested costs be assessed against Appellant "pursuant to Missouri Supreme Court Rule 77.01," the circuit court's order makes no reference to Supreme Court Rule 77.01. "We presume that the trial court knew and followed the law unless its judgment clearly indicates otherwise." *In re Marriage of Davis*, 378 S.W.3d 426, 432 n.4 (Mo. App. S.D. 2012) (citing *Panettiere v. Pannetiere*, 945 S.W.2d 533, 540 (Mo. App. W.D. 1997)). Because the circuit court's judgment does not clearly indicate otherwise, we presume the circuit court assessed costs against Appellant in a manner consistent with "the exercise of reasonable discretion" under Supreme Court Rule 86.09.

Appellant also argues that, even if the circuit court assessed costs against him under Supreme Court Rule 86.09, LCRA had a duty to justify the circuit court's award of costs and failed to do so. However, Appellant cites no rule or case, and we can find no rule or case, imposing that requirement. As Missouri courts have held, "All that we can read into . . . [Supreme Court R]ule [86.09] is that it allows the trial court to assess costs in the trial of the exceptions in the exercise of a reasonable discretion." *State ex rel. Farris v. Clifford*, 543 S.W.2d 811, 813 (Mo. App. 1976). LCRA had no duty under Supreme Court Rule 86.09 to justify the circuit court's award of costs.

Point III is denied.

*Point IV: Homestead Allowance*

Appellant's fourth point argues the circuit court erred in denying his request for a homestead allowance.

17

<u>Standard of Review</u>

Decisions made by the circuit court without the aid of the jury are reviewed under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "Under *Murphy v. Carron*, this Court will affirm the judgment of the trial court 'unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." *Cent. Parking Sys. of Mo., LLC v. Tucker Parking Holdings, LLC*, 519 S.W.3d 485, 492 (Mo. App. E.D. 2017) (footnote omitted) (quoting *Lambrich v. Kay*, 507 S.W.3d 66, 74 (Mo. App. E.D. 2016)).

<u>Analysis</u>

Section 523.039 sets forth the methods for determining just compensation for condemned property. *See* § 523.039; *City of Cape Girardeau v. Elmwood Farms, L.P.*, 575 S.W.3d 280, 284 (Mo. App. E.D. 2019). "Specifically, Section 523.039(1) through (3) determines just compensation for condemned property by whichever yields the highest compensation applicable to the property." *Id.* Under section 523.039(1) through (3), just compensation for condemned property is either:

(1) An amount equivalent to the fair market value of such property;

(2) For condemnations that result in a homestead taking, an amount equivalent to the fair market value of such property multiplied by one hundred twenty-five percent; or

(3) For condemnations of property that result in any taking that prevents the owner from utilizing property in substantially the same manner as it was currently being utilized on the day of the taking and involving property owned within the same family for fifty or more years, an amount equivalent to the sum of the fair market value and heritage value . . . .

18

§ 523.039(1)-(3).  Under section 523.039(2), a "homestead taking" is defined as "any taking of a dwelling owned by the property owner and functioning as the owner's primary place of residence."  § 523.001.

Appellant argues the circuit court erred in denying his request for a homestead allowance because it improperly found his testimony the Property was his primary place of residence "not credible," even though both parties stipulated to the evidence before the circuit court regarding Appellant's entitlement to such an allowance and no live testimony was presented to the circuit court.  Because the issue was tried upon stipulated facts, Appellant argues the circuit court "had no basis for considering [his] credibility" and, therefore, the circuit court's judgment denying his request for a homestead allowance was erroneous.

Appellant's argument is misguided.  It is true "we will not give deference to a trial judge's determination regarding credibility of witnesses" when an issue is tried solely upon stipulated facts.  *Thompson v. Chase Manhattan Mortg. Corp.*, 90 S.W.3d 194, 200 (Mo. App. S.D. 2002) (citing *Jarrell v. Dir. of Rev.*, 41 S.W.3d 42, 45 (Mo. App. S.D. 2001)).  However, the fact we will not *defer* to a circuit court's determination of witness credibility when an issue is tried solely upon stipulated facts does not mean the circuit court has no basis to weigh the credibility of the evidence before it in reaching a decision.  When confronted with conflicting evidence, a circuit court must always weigh the credibility of that evidence in reaching its decision.  *See Griffitts v. Old Republic Ins. Co.*, 550 S.W.3d 474, 477 n.3 (Mo. banc 2018) (alterations in original) (quoting *State v. Lytle*, 715 S.W.2d 910, 915 (Mo. banc 1986)) ("[c]onflicts in the evidence [are] for the trial court to resolve.").

In addition, the issue of Appellant's entitlement to a homestead allowance was not tried *solely* upon stipulated facts.  The Joint Statement of Facts filed with the circuit court stated the

parties agreed to "waive the opportunity to present live testimony and ask the Court to determine the issues based upon t[he stipulated] evidence, *the evidence adduced at trial*, and the arguments of counsel." (emphasis added). As LCRA noted, Appellant repeatedly testified regarding his alleged residency in the Property at trial. On direct-examination, Appellant testified his primary residence was on the fourth floor of the Property beginning in the summer of 2015. He testified he filed state income taxes in Missouri in 2015 and 2016: filed a city earnings tax in Missouri in 2015 and 2016; registered to vote in Missouri in 2015; and obtained a Missouri non-driver's license because he maintained a commercial driver's license in Florida. On cross-examination, Appellant testified he never asked for an occupancy permit to live in the Property.

The circuit court "is free to believe or disbelieve all, part, or none of the testimony of any witness" testifying at trial. *Tolliver v. 5 G Homes, LLC*, 563 S.W.3d 827, 834 (Mo. App. E.D. 2018) (citing *Watson v. Mense*, 298 S.W.3d 521, 525-26 (Mo. banc 2009)). We defer to the trial court's assessment of credibility of witnesses who testified at trial. *State ex rel. Family Support Div. v. Steak'm Take'm LLC*, 524 S.W.3d 584, 589 (Mo. App. W.D. 2017) (citing *Roper Elec. Co. v. Quality Castings, Inc.*, 60 S.W.3d 708, 710 (Mo. App. S.D. 2001)). This deference is appropriate because the trial court "is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." *Tolliver*, 563 S.W.3d at 834 (quoting *Essex Contracting Inc. v. Jefferson Cty.*, 277 S.W.3d 647, 653 (Mo. banc 2009)). Thus, the circuit court was free to disbelieve Appellant's trial testimony he used the Property as his primary residence. The circuit court properly considered the credibility of Appellant's trial testimony in reaching its judgment. We must defer to its determination. *Steak'm Take'm LLC*, 524 S.W.3d at 589.

20

Further, the circuit court's judgment denying Appellant's request for a homestead allowance is supported by substantial evidence derived from the parties' Joint Statement of Facts. In the Joint Statement of Facts, the parties stipulated Appellant would testify he began using the fourth floor of the Property as his primary residence in the summer of 2015. Appellant obtained a Missouri non-driver's license; paid a city earnings tax; registered to vote in Missouri in 2015; listed the Property as his address for his health and car insurance; and filed state income taxes in Missouri in 2015 and 2016. Appellant did not own the Property when he allegedly moved into it in the summer of 2015 or when LCRA sent notice it intended to acquire the Property by eminent domain in November 2015.

Appellant never abandoned his home in Florida; maintained his Florida driver's license, which he renewed in November 2017; and listed Florida as his home address on his 2014 Federal Tax Income Return, which was filed in September 2015 when he claimed to be using the Property as his primary residence. The Property was zoned for industrial use and not approved for residential use, the City of St. Louis never issued an occupancy permit for Appellant to reside at the Property, and Appellant was aware the City of St. Louis' zoning laws prohibited him from living at the Property. From July 2015 until January 2017, Appellant repeatedly left town and spent more time in Florida than Missouri. Inspections of the Property revealed some appliances on the Property were not functioning during the time in which Appellant claimed to be living in the Property.

The circuit court's judgment states "the facts lead to the conclusion that the building was not [Appellant]'s primary place of residence." "[W]here facts essential to an element of a case are derived from non-live sources and are in conflict, appellate courts give deference to the trial court's conclusions about those facts." *Thompson*, 90 S.W.3d at 200 (citing *Jarrell*, 41 S.W.3d

at 46[9]). Because we defer to the circuit court's conclusions about the facts alleged in the Joint Statement of Facts, and we defer to the circuit court's determinations regarding credibility of Appellant's trial testimony, we find the circuit court's judgment is supported by substantial evidence and is not against the weight of the evidence.

Point IV is denied.

*Point V: Exclusion of Evidence of Settlement Amount*

Appellant's fifth point argues the circuit court abused its discretion when it excluded evidence of a settlement agreement between him and AT&T, a company that rented a space for a cell tower on the Property's roof from Appellant before the Property's condemnation. Under the settlement agreement, Appellant paid AT&T $65,000 to resolve any claims arising from the termination of AT&T's lease with Appellant because of the Property's condemnation. Appellant argues the circuit court improperly excluded this evidence because it erroneously believed section 523.053 required the settlement amount be determined at a separate distribution after the jury returned their verdict.

Standard of Review

"We review a trial court's ruling on the admission or exclusion of evidence for abuse of discretion." *State v. Ecford*, 198 S.W.3d 156, 158 (Mo. App. E.D. 2006) (citing *State v. Nelson*, 178 S.W.3d 638, 642 (Mo. App. E.D. 2005)). "In condemnation cases, trial court errors in the admission or exclusion of evidence will not typically result in our reversing a decision without a showing of substantial or glaring injustice." *Glaize Creek Sewer Dist. of Jefferson Cty. v. Gorham*, 335 S.W.3d 590, 593 (Mo. App. E.D. 2011) (internal citations omitted).

<u>Analysis</u>

A tenant may be entitled to a portion of the proceeds of the commissioners' award if he or she establishes a "bonus value" of the unexpired term of the lease exists. *City of Riverside v. Progressive Inv. Club of Kan. City*, 45 S.W.3d 905, 911 (Mo. App. W.D. 2001) (internal citations omitted). However, if a condemned property is subject to a leasehold interest, a single award of damages is made without regard to the lessee's claim. *Santa Fe Trail Neighborhood Redevelopment Corp. v. W.F. Coehn & Co.*, 154 S.W.3d 432, 442 (Mo. App. W.D. 2005) (citing *State ex rel. Mo. Highway & Transp. Comm'n v. Rantz*, 43 S.W.3d 436, 440 (Mo. App. S.D. 2001)). Once a single award of damages is made, section 523.053 governs the distribution of condemnation awards among defendants.

Section 523.053(1) provides "those defendants claiming a determinable interest in the proceeds of [the commissioners'] award may file with the court an agreement setting out the manner and percentages in which said award is to be divided among them." § 523.053(1). But section 523.053(4) specifically provides "[a]ny evidence relating to the terms of said determination of interest *shall not be admissible as evidence before the jury on the trial of . . . exceptions*." § 523.053(4) (emphasis added). At trial, the circuit court declined to admit evidence regarding the settlement amount Appellant paid AT&T, stating "I think it is a matter that can be handled after the verdict in this trial." Because section 523.053(4) mandates evidence of other interests in the proceeds of the award be excluded in a jury trial on exceptions, we cannot find the circuit court abused its discretion.

Point V is denied.

*Point VI: Exclusion of Photographs and Criticism in Front of the Jury*

Appellant's sixth point argues the circuit court abused its discretion when it excluded photographic evidence of Appellant's experience in the construction and hotel industry and nearby developments in the City of St. Louis. He claims the photographs' exclusion prejudiced his ability to present his case in an effective manner. Appellant also complains the circuit court "compounded its error by criticizing [him] in front of the jury and directing [his] counsel 'to move forward' on these matters."

## Standard of Review

"We review a trial court's ruling on the admission or exclusion of evidence for abuse of discretion." *Ecford*, 198 S.W.3d at 158 (citing *Nelson*, 178 S.W.3d at 642). "In condemnation cases, trial court errors in the admission or exclusion of evidence will not typically result in our reversing a decision without a showing of substantial or glaring injustice." *Gorham*, 335 S.W.3d at 593 (internal citations omitted).

## Supreme Court Rule 84.04 and Preservation of Error

Initially, we note Appellant's sixth point violates Supreme Court Rule 84.04(d). Appellant's sixth point argues the circuit court erred in three distinct ways: (1) by excluding photographic evidence relating to his experience in the construction and hotel industry, (2) by excluding photographic evidence relating to recent developments in the City of St. Louis; and (3) by criticizing him in front of the jury for testifying in too much detail.[10] "A single point relied on that groups multiple, disparate claims is multifarious, does not comply with [Supreme Court]

---

[10] The argument portion of Appellant's brief also challenges the circuit court's exclusion of a briefcase containing Buster Brown memorabilia from evidence. However, the circuit court's ruling excluding the briefcase containing Buster Brown memorabilia from evidence is not challenged in Appellant's sixth point relied on. Issues developed for the first time in the argument section that are different from those raised in the point relied on preserve nothing on appeal. *See State v. Scott*, 531 S.W.3d 639, 641 n.2 (Mo. App. S.D. 2017) and *State v. Morrow*, 541 S.W.2d 738, 740 (Mo. App. 1976). Therefore, we will not address whether the circuit court abused its discretion in excluding the briefcase containing Buster Brown memorabilia.

Rule 84.04, and generally preserves nothing for review." *Simmons v. McCulloch*, 501 S.W.3d 14, 16 (Mo. App. E.D. 2016) (internal quotations and citations omitted). However, "[a]s a matter of policy, the court prefers to decide cases on their merits whenever possible." *Comp & Soft, Inc. v. AT&T Corp.*, 252 S.W.3d 189, 194 (Mo. App. E.D. 2008). Because the deficiencies in Appellant's point relied on do not impede our ability to discern his arguments or our disposition on the merits, we review his sixth point *ex gratia*. *O'Gorman & Sandroni, P.C. v. Dodson*, 478 S.W.3d 539, 543 n.1 (Mo. App. E.D. 2015).

We further note Appellant has waived his claimed error that the circuit court criticized him in front of the jury because he failed to object to any of the circuit court's comments of which he now complains. "To preserve a claim of error directed to remarks of a trial judge, an objection must be made when they occur." *State v. Massey*, 990 S.W.2d 201, 205 (Mo. App. S.D. 1999) (internal quotations and citations omitted). When a party fails to object to a trial judge's remarks, his or her claim of error is waived "unless the conduct was erroneous and amounted to conduct that affected the defendant's substantial rights so as to result in manifest injustice or miscarriage of justice." *Id.* Therefore, we review Appellant's claim of alleged error regarding the circuit court's alleged criticisms only for plain error.

<u>Analysis</u>

**Exclusion of Photographic Evidence**

Appellant summarily states "the trial court abused its discretion by improperly prejudicing [him] in his ability to use photographs to present his case in an effective manner" and lists several instances where the circuit court sustained objections to various photographs relating to his experience in the construction and hotel industries and nearby developments in the City of St. Louis. However, Appellant failed to explain why such photographs were relevant or

25

necessary to presenting his case in an effective manner. The sole issue before the jury in the trial of exceptions was the value of the Property; that is, the just compensation Appellant was entitled to for its taking or its "fair market value." "The fair market value of land is what a reasonable buyer would give who was willing but did not have to purchase, and what a seller would take who was willing but did not have to sell." *St. Louis Cty. v. River Bend Estates Homeowners' Ass'n*, 408 S.W.3d 116, 135 (Mo. banc 2013) (citing *City of St. Louis v. Union Quarry*, 394 S.W.2d 300, 305 (Mo. 1965)).

Appellant has failed to show how photographs of his personal experience in the construction and hotel industries and photographs of nearby developments in the City of St. Louis were relevant to helping the jury determine what a reasonable buyer would pay for the Property and what a reasonable seller would accept in a sale of the Property. The identity, knowledge, and experience of a landowner is irrelevant to a determination of just compensation. Photographs of nearby properties not being offered as comparable sales are similarly irrelevant. The circuit court's decision to exclude irrelevant evidence is not an abuse of discretion. *Bella v. Turner*, 30 S.W.3d 892, 897 (Mo. App. S.D. 2000). Even if these photographs were relevant, Appellant was allowed to testify at length about his experience in the construction and hotel industries and other photographs portraying nearby properties were admitted into evidence. Therefore, the photographs in question were cumulative at best and their exclusion was within the discretion of the trial court. *See State, ex rel. Mo. Highway & Transp. Comm'n v. Conley Devel. Co.*, 628 S.W.2d 683 (Mo. App. E.D. 1982).

### Alleged Criticisms by the Circuit Court

Appellant also summarily states "[t]he trial court compounded the prejudicial effect of excluding photographic evidence when it criticized [him] in front of the jury." Appellant argues

the trial court's criticisms of him included interrupting Appellant's testimony to caution that he did not need so many details and instructing his counsel to "help move [the trial] forward." However, Appellant fails to explain how the circuit court's remarks were erroneous. "There is no error if the circuit court does not express an opinion regarding the nature, content, or truthfulness of evidence." *State v. Jackson*, 386 S.W.3d 810, 818 (Mo. App. S.D. 2012) (quoting *State v. Webber*, 982 S.W.2d 317, 321 (Mo. App. S.D. 1998)). We find no error, plain or otherwise, in the conduct of the circuit court. The circuit court's comments asked Appellant to refrain from giving too many details in his testimony "to move things along." These comments expressed no opinion about the nature, content, or truthfulness of Appellant's testimony. *See id.* Appellant has failed to demonstrate the circuit court's remarks impacted so substantially upon his rights that manifest injustice or a miscarriage of justice would result if left uncorrected.

Point VI is denied.

*Point VII: Admission of LCRA's Photographs of the Property*

Appellant's seventh point argues the circuit court abused its discretion when it admitted photographs offered by LCRA depicting the Property *after* the date of the taking. He argues these photographs "confused the jury over whether [they] could consider the condition of the building after [Appellant] moved out."

Supreme Court Rule 84.04

Appellant's seventh point challenges the admission of "LCRA's photographs" without specifically identifying the exhibits he contends were erroneously admitted. His failure to do so violates Supreme Court Rule 84.04(d)(1)(C), which provides each point relied on shall "explain in a summary fashion why, *in the context of the case*, th[e] legal reasons support the claim of reversible error," and preserves nothing for review. Supreme Court Rule 84.04(d)(1)(C)

(emphasis added); *see also Herd v. Herd*, 537 S.W.3d 414, 418 (Mo. App. S.D. 2018) (holding that, where an appellant's point relied on fails to identify the specific trial testimony or exhibits supporting his or her claim, nothing is preserved for review). The argument portion of Appellant's brief, however, challenges the admission of Exhibits 13, 19, 20, 34, and 338. Because we prefer to review deficient points on their merits so long as the deficiencies do not impede impartial review, we review Appellant's seventh point *ex gratia*. *Stevens v. Cato*, 549 S.W.3d 479, 483 (Mo. App. S.D. 2017).

### Standard of Review

"The admission of photographs lies within the sound discretion of the trial judge and will not be disturbed on appeal unless an abuse of discretion is shown." *Lockwood v. Jackson Cty., Mo.*, 951 S.W.2d 354, 358 (Mo. App. W.D. 1997) (citing *Mo. Highway & Transp. Comm'n v. Rockhill Dev. Corp.*, 865 S.W.2d 765, 770 (Mo. App. W.D. 1993)). "In condemnation cases, trial court errors in the admission or exclusion of evidence will not typically result in our reversing a decision without a showing of substantial or glaring injustice." *Gorham*, 335 S.W.3d at 593 (internal citations omitted).

### Analysis

"A photograph will not be rendered inadmissible by the fact that it was taken before or after an event or before or after changes occurred as long as the extent of the changes is explained." *Rockhill Dev. Corp.*, 865 S.W.2d at 770 (citing *State ex rel. Mo. Highway & Transp. Comm'n v. Vitt*, 785 S.W.2d 708, 712 (Mo. App. E.D. 1990)). Testimony that the photograph did not depict the property as of the date of the taking adequately informs the jury the Property changed after the taking. *See State ex rel. Mo. Highway & Transp. Comm'n v. Meramec Valley Elevator, Inc.*, 782 S.W.2d 642, 645 (Mo. App. E.D. 1989).

The record reveals LCRA introduced Exhibits 13, 19, 20, 34, and 338 and elicited testimony that each of the photographs depicted the Property either after or near the date of the taking. Shortly after LCRA admitted Exhibit 13 and before LCRA admitted Exhibit 34, Mueller testified the photographs depicted the Property after Appellant moved out, but when he viewed the Property he "had no idea that [Appellant] had moved out" and "thought [Appellant] had just removed everything that was inside." Before admitting Exhibit 19, Schoenborn testified the photograph clearly and accurately depicted the Property's condition after Appellant moved out. Before admitting Exhibit 20, Schoenborn testified the photograph clearly and accurately depicted the way the Property looked when he inspected the building in March 2017, which was after the date of the taking. And Exhibit 338 was admitted after Appellant testified there were "places in the [Property] that looked like" the photograph in July 2016, which was near or shortly after the date the Property was taken.[11] This testimony at trial adequately informed the jury the Property changed after the taking. Further, as LCRA notes, Appellant also offered photographs taken after the taking on May 31, 2017, into evidence during trial, accompanied by a witness' explanation that the photographs were taken after the date of the taking. Having done so, he is in no position to object to the admission of LCRA's photographs taken after the taking. *State ex rel. State Highway Comm'n v. Howard*, 315 S.W.2d 786, 791 (Mo. 1958).

Point VII is denied.

---

[11] The Property was taken July 7, 2016.

*Point VIII: Admission of Evidence Regarding an Alleged Fraudulent Tax Credit Scheme*[12]

Appellant's last point argues the circuit court erred in allowing LCRA to cross-examine McKee regarding an alleged fraudulent tax credit scheme used to acquire the Property and other properties and call Hemenway as a witness to give opinion testimony regarding the same. Appellant argues evidence relating to an alleged fraudulent tax credit scheme was irrelevant and the circuit court erroneously allowed "a false issue to be injected in the trial."

<u>Standard of Review</u>

"We review a trial court's ruling on the admission or exclusion of evidence for abuse of discretion." *Ecford*, 198 S.W.3d at 158 (citing *Nelson*, 178 S.W.3d at 642). "In condemnation cases, trial court errors in the admission or exclusion of evidence will not typically result in our reversing a decision without a showing of substantial or glaring injustice." *Gorham*, 335 S.W.3d at 593 (internal citations omitted).

---

[12] LCRA argues Appellant's eighth point relied on fails to comply with Supreme Court Rule 84.04(d) by grouping together numerous, unrelated incidents of alleged error into a single point relied on. Although Appellant's eighth point argues the circuit court erred in allowing LCRA to cross-examine McKee *and* call Hemenway as a witness, we find Appellant's eighth point does not run afoul of Supreme Court Rule 84.04(d) because his challenges to both witnesses revolve around a central issue: McKee's alleged involvement in a fraudulent tax credit scheme used to acquire the Property and other related properties. Therefore, his eighth point is not waived for failure to comply with Supreme Court Rule 84.04(d).

LCRA also argues Appellant failed to preserve his claim of error regarding the cross-examination of McKee because this claim of error was not included in his motion for new trial. Although Appellant did not use the term "cross-examination" in his motion for new trial, we find he has sufficiently preserved his claim of error. Our rules for preservation of error are applied to enable both the trial court and the appellate court "to define the precise claim made by the defendant," not "to enable the court to avoid the task of review, nor to make preservation of error difficult for the appellant." *State v. Amick*, 462 S.W.3d 413, 415 (Mo. banc 2015) (quoting *State v. Pointer*, 887 S.W.2d 652, 654 (Mo. App. W.D. 1994)). Appellant's motion for new trial alleged "[t]he [circuit c]ourt erred in allowing the jury trial to become a referendum about McKee and the alleged fraud committed against the state by [NSR]. . . . Th[e] [circuit c]ourt allowed, over objection and through plain error, evidence both hearsay and otherwise, that was irrelevant to the valuation [of] the subject property." This allegation sufficiently preserved his argument on appeal that the circuit court abused its discretion in permitting LCRA to cross-examine McKee about the alleged fraudulent tax scheme used to purchase the Property and other related properties.

**Cross-Examination of McKee**

Appellant argues he did not "open the door to a wide-ranging attack on McKee's use of tax credits for the [Property]" by calling McKee as a witness.  We disagree.  "A party who has introduced evidence concerning a certain fact may not on appeal complain that his opponent was allowed to introduce related evidence, in rebuttal or explanation." *Eckerd v. Country Mut. Ins. Co.*, 289 S.W.3d 738, 744 (Mo. App. E.D. 2009) (footnote omitted) (quoting *Bowls v. Scarborough*, 950 S.W.2d 691, 702 (Mo. App. W.D. 1997)).  On direct-examination, McKee testified at length about the 2011 Sale.  He testified about the promissory notes he signed in connection with the 2011 Sale; the price he paid for the Property and whether it was inflated; the structure of the triple net lease; the owner-financed, sale-leaseback structure of the transaction; the fact the State issued and then denied tax credits associated with the transaction; and the "unwinding" of the 2011 Sale.  Appellant concedes in his brief "McKee['s] testimony about the 2011 [S]ale to NSR and the later unwind transaction was relevant background for the valuation opinion given by [Appellant]'s . . . appraiser, William Otto Spence."  Appellant cannot now complain LCRA was allowed to cross-examine McKee on the relevant issues he raised in his direct-examination of McKee.  *See id.*

Appellant also contends evidence related to whether McKee, through NSR, and Appellant defrauded the State in the purchase of other properties is "irrelevant."  This argument is also without merit.  "Evidence is relevant if it tends to prove or disprove a fact in issue or corroborates other evidence in the case." *Burrows v. Union Pac. R. Co.*, 218 S.W.3d 527, 534 (Mo. App. E.D. 2007) (citing *Uxa ex rel. Uxa v. Marconi*, 128 S.W.3d 121, 130 (Mo. App. E.D. 2003)).  "The trial court has substantial discretion in ruling on the admissibility of evidence."

*Urbach v. Okonite Co.*, 514 S.W.3d 653, 659 (Mo. App. E.D. 2017) (citing *Danneman v. Pickett*, 819 S.W.2d 770, 772 (Mo. App. E.D. 1991)). "The admissibility of evidence in [condemnation cases] depends on whether it tends to help the jury in resolving the issue of value and damages." *State ex rel. Mo. Highway & Transp. Comm'n v. Edelen*, 872 S.W.2d 551, 555 (Mo. App. E.D. 1994) (citing *State ex rel. State Hwy. Comm'n v. Texaco, Inc.*, 502 S.W.2d 284, 288 (Mo. 1973)).

The evidence in question helped shed light on whether the 2011 Sale of the Property for $3.75 million represented an accurate valuation of the Property. The evidence demonstrated a pattern of activity that is corroborative of LCRA's position that the 2011 Sale of the Property did not represent an accurate valuation of the Property because the sales of the other properties: (1) were structured similarly to the 2011 Sale; (2) were between NSR/McKee and Appellant; and (3) occurred before or close in time to the 2011 Sale. *See K.C. Roofing Ctr. v. On Top Roofing, Inc.*, 807 S.W.2d 545, 550 (Mo. App. W.D. 1991). The circuit court did not abuse its discretion in allowing cross-examination about McKee's involvement with Appellant in purchasing other properties.

**Hemenway's Testimony**

Appellant maintains the circuit court abused its discretion in allowing Hemenway to testify about her opinions regarding an alleged fraudulent tax credit scheme McKee and Appellant used to purchase and sell the Property and other related properties because she was not designated as an expert witness. However, the record before us does not show Hemenway gave opinion testimony. A lay witness "may testify about facts within his or her personal knowledge." *Urbach*, 514 S.W.3d at 660. Here, Hemenway testified to facts she knew about McKee's and Appellant's alleged tax credit scheme to facilitate the purchase of the Property and other related properties through first-hand knowledge she acquired as the Division Director at the

32

Missouri Department of Economic Development. Hemenway testified tax credits were initially issued to McKee for half of the $3.75 million used to purchase the Property. Hemenway testified the owner-financed, sale-leaseback structure of the transaction was improper. Hemenway testified the State denied tax credits for the sale of one of the other properties and rescinded the tax credits given to McKee for the 2011 Sale. Because none of Hemenway's testimony expressed an "opinion," there was no need to designate her as an "expert" for her testimony to be admissible. And, as explained above, Hemenway's testimony regarding the alleged fraudulent tax credit scheme to purchase the Property and other properties was relevant to determine whether the 2011 Sale of the Property for $3.75 million represented an accurate valuation of the Property. Accordingly, the circuit court did not abuse its discretion in allowing Hemenway's testimony about an alleged fraudulent tax credit scheme to purchase the Property.

Point VIII is denied.

## Conclusion

The circuit court's judgment is affirmed.

_____

Philip M. Hess, Presiding Judge

Kurt S. Odenwald, J. and
Lisa P. Page, J. concur.